# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1426

_____

In re: Nanci Anne Long      *
     *
           Debtor.      *
     *
_____      *
     *
     *
Nanci Anne Long,      * Appeal from the United States
     * Bankruptcy Appellate Panel
           Appellee,      * for the United States Court of
     * Appeals for the Eighth Circuit.
       v.      *
     *
Educational Credit Management      *
Corporation,      *
     *
           Appellant.      *
     *

_____

Submitted: October 11, 2002

Filed: March 11, 2003

_____

Before McMILLIAN, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Educational Credit Management Corporation ("ECMC") appeals the Bankruptcy Appellate Panel's ("BAP") decision affirming the Bankruptcy Court's

discharge of Nanci Long's student loan debt. This case requires us to address the undue hardship provision found in 11 U.S.C. § 523 (a)(8)(B). ECMC argues that the Bankruptcy Court erred in its determination that repayment of the debt would impose an "undue hardship" on appellee. ECMC also contends that the BAP relied on an incorrect review standard to reach its decision. We reverse and remand.

## I.
### *Background*

Appellee, Nanci Long, is a thirty-nine-year old, single-mother. Appellee matriculated through Northwestern College of Chiropractic. She financed her education there, in part, through substantial student loans, which are the subject of this case. In 1987 she passed her state-board examination. Until 1990 she worked as a chiropractor in various clinics. Appellee owned and operated a successful chiropractic practice from 1990 until 1993. At some point in 1993, appellee began to experience extreme fatigue, depression, and diminution of her mental faculties. These symptoms increasingly affected her work, causing a substantial drop in her clientele. In 1995, appellee terminated her chiropractic practice altogether, citing an inability to handle life changes. She continued in a downward economic and emotional spiral.[1] At one point, she attempted suicide. Fortunately, in 1997, appellee obtained appropriate professional help and has begun a recovery process. She is now gainfully employed and is pursuing an additional college degree.

According to appellee, her symptoms currently include "severe, short-term memory loss," persistent ache, dramatic weight gain, and anxiety about being in public places. In order to treat her condition, appellee takes various prescription

---

[1] Appellee's chiropractic license lapsed in 1999.

drugs[2] and sleeps in excess of twelve hours per day.[3] The Bankruptcy Court found that appellee's medical condition will persist into the future and will interfere with her future earning potential.

Appellee currently works (as a laboratory manager at a community college) nine months of the year, for approximately thirty-two hours per week. She is paid $12.59 per hour and earns approximately $1,163 per month. Appellee's monthly wage covers all of her existing expenses. She currently resides in her parents' home and pays them $500 to $600 per month. This amount–in addition to the subsidies her parents provide–covers her and her ten-year old child's rent, utilities, car payment, car insurance, health insurance, cellular phone bill, child care, and food. Appellee's additional monthly expenses include approximately $50 for personal expenses, $100 for entertainment and dining-out, and $100 to $275 for gasoline. She also pays $80 per month towards her child's private-school tuition. Lastly, appellee covers her tuition costs–related to her pursuit of a four-year degree–which vary depending on the particular course, credits, and college.[4]

The debt in question originated shortly after appellee's graduation from chiropractic college with the disbursement of a $35,322.81 consolidated student loan.[5] Appellee made approximately ten years' of payments towards this debt, but

---

[2] These medications include: Welbutrin, Serzone, Prozac, and Glucophase.

[3] On a typical day, appellee will awake at 6:00 a.m., return to bed for a one or two hour morning nap, arrive at work at 9:00 a.m., return home to nap between 3:30 p.m. and 6:00 p.m., and conclude her day at 8:30 p.m.

[4] Appellee takes courses at Metropolitan State University and Cambridge Community College. Her annual tuition costs range between $500 and $800.

[5] The debt owing to ECMC results from a guaranteed student loan originally made to appellee by Sallie Mae on December 11, 1987, that was subsequently consolidated and transferred to Great Lakes Higher Education Corporation and

defaulted after she became ill. She filed her bankruptcy petition in 2000.[6] With principal, interest, and collection costs, appellee now owes ECMC over $61,000. Additionally, appellee still owes $15,000 of a separate, non-dischargeable Health Education Assistance Loan ("HEAL loan").

In its collection efforts, ECMC urged appellee to consider the Income Contingent Repayment Plan ("ICRP"),[7] which the Department of Education[8] administers. Under the ICRP, the Department of Education will cancel any balance the appellee owed on her total student loan obligation–HEAL or ECMC–after twenty-five years of repayment has occurred. *See* 34 C.F.R. § 685.209(c)(4)(iv) ("If a borrower has not repaid a loan in full at the end of the 25-year repayment period under the income contingent repayment plan, the Secretary cancels the unpaid portion of the loan.") Appellee acknowledged familiarity with the ICRP. However, she did not apply because she believed that she could not "handle things" and because her circumstances continued to be overwhelming.

After its hearing, the Bankruptcy Court granted appellee an undue hardship discharge. It reasoned that requiring appellee's ECMC loan repayment would essentially impose a "sentence of [twenty-five] years in payments on an obligation that she could never realistically expect to retire or reduce." The Bankruptcy Court concluded that the severity and "historical intensity" of appellee's illness and "overall

---

thereafter assigned to ECMC.

[6] At the time appellee filed her bankruptcy petition, the debt was owned by Great Lakes Higher Education Corporation. Shortly thereafter, the loan was assigned to ECMC.

[7] *See* 34 C.F.R. § 685.209.

[8] This plan is a part of the William D. Ford Direct Loan Consolidation Program. *See* 34 C.F.R. § 685.200, *et. seq.*

prognosis" would prevent appellee from earning enough money to "dig herself out of these. . .loans." Conversely, the Bankruptcy Court also noted that "there is some good reason to believe that [appellee] will ultimately get herself substantially out of this unfortunate situation and circumstance." It also optimistically stated that "there is good reason to believe that [appellee's] medical situation will improve."

After conducting a review for "clear error," a divided BAP summarily affirmed the Bankruptcy Court's decision. On appeal, ECMC argues that the BAP should have used the de novo standard in its review of the Bankruptcy Court's "undue hardship" determination. ECMC also contends that appellee's student loans were not dischargeable under § 523(a)(8)(B), because the loans did not impose an undue hardship.

## II.

### *Standard of Review*

This Court has not previously specified the appropriate "undue hardship" review standard for Eighth Circuit reviewing courts. Perhaps for this reason, the Eighth Circuit BAP has applied a clearly erroneous review standard. *See Andresen v. Nebraska Student Loan Program, Inc.* (*In re Andresen*), 232 B.R. 127 (B.A.P. 8th Cir. 1999). ECMC argues that the Eighth Circuit BAP should not have applied the clearly erroneous standard and should have applied a de novo standard of review. All other circuit courts, who have addressed this issue, have concluded that an "undue hardship" determination is a question of law, which requires a de novo review. *In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001); *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001); *Tennessee Student Assistance Comm'n v. Hornsby*, 144 F.3d 433, 436 (6th Cir. 1998); *In re Woodstock*, 45 F.3d 363, 367 (10th Cir. 1995); *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir. 1993); *Brunner v. New York State Higher Educ. Serv.*

*Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).[9] Whether declining to discharge appellee's student loans would impose on her "undue hardship" under 11 U.S.C. § 523(a)(8)(B) is a question of law. It requires a conclusion regarding the legal effect of the Bankruptcy Court's findings as to her circumstances. Questions of law are reviewed de novo. *In re Papio Keno Club, Inc.*, 262 F.3d 725, 728 (8th Cir. 2001). Therefore, we agree with our sister circuits. The conclusion that appellee's student loans impose an "undue hardship" is a legal question to be reviewed de novo.

III.

*Undue Hardship Test*

ECMC also urges this Court to adopt the three-part test articulated in *Brunner v. New York State Higher Educ. Serv. Corp.*, in a determination of "undue hardship." 831 F.2d at 396. For the reasons set forth below, we decline to do so. Instead, we reaffirm the totality-of-the-circumstances test as set forth in *Andrews v. South Dakota Student Loan Assistance Corp.* (*In re Andrews*), 661 F.2d 702, 704 (8th Cir. 1981).

---

[9] Neither the First Circuit Court of Appeals, nor the Bankruptcy Appellate Panel for the First Circuit has published an opinion regarding the review standard for "undue hardship" determinations under 11 U.S.C. § 523(a)(8). However, in the related context of legally defining the term "governmental unit" under § 523(a)(8), the First Circuit concluded that "[a]ppellate courts review bankruptcy court findings of fact under the clearly erroneous standard, but subject legal conclusion[s] drawn by such courts to de novo review." *T.I. Fed. Credit Union v. Delbonis*, 72 F.3d 921, 928 (B.A.P. 1st Cir. 1995).

Although the Fourth Circuit Court of Appeals has not decided the standard of review for § 523(a)(8) hardship discharges, the district courts within the Fourth Circuit have unanimously reviewed such cases under the de novo standard. *See In re Ekenasi*, 271 B.R. 256, 261 (S.D. W.Va. 2002); *In re Coulson*, 253 B.R. 174, 175–76 (W.D.N.C. 2000); *In re Dillon*, 189 B.R. 382, 384 (W.D. Va. 1995); *In re Malloy*, 155 B.R. 940, 945 (E.D. Va. 1993).

Section 523(a)(8)(B) provides that an educational loan is not dischargeable unless "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." Congress excepted student loans from discharge in order to close what it deemed a loophole in the student loan program. *See* Raymond L. Woodcock, *Burden of Proof, Undue Hardship, and Other Arguments for the Student Debtor Under 11 U.S.C. § 523(A)(8)(B)*, J.C. & U.L. 377, 381–84 (1998); *see also Johnson v. Missouri Baptist Coll. (In re Johnson),* 218 B.R. 449, 451–54 (B.A.P. 8th Cir. 1998). The policy of this provision was clear. Congress intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligation from doing so.

However, the clarity that is found in the legislative purpose and policy surrounding §523(a)(8)(B) is decidedly absent in the meaning Congress ascribed to the term "undue hardship." The Bankruptcy Code does not define the phrase and courts have struggled with its meaning. A divergent body of appellate authority has attempted to unwrap the "undue hardship" enigma. *See Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 303–305 (3d Cir. 1995); *Chessman v. Tennessee Student Assistance Corp. (In re Chessman)*, 25 F.3d 356, 359 (6th Cir. 1994); *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993); *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*; 661 F.2d 702, 704 (8th Cir. 1981); *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 207 B.R. 919, 922 (B.A.P. 9th Cir. 1997)

Many bankruptcy courts, including several in the Eighth Circuit, have adopted the *Brunner* test. *See e.g., In re Rose*, 227 B.R. 518, 524 n. 7 (Bankr. W.D. Mo 1998) (citations omitted); *Hawkins v. Buena Vista Coll. (In re Hawkins)*, *Zlotopolski v. Dressel (In re Dressel)*, 212 B.R. 611, 615–616 (Bankr. E.D. Mo. 1997); 187 B.R. 294, 297–298 (Bankr. N.D. Iowa 1995). To date, the Eighth Circuit has not. *Andrews,* 661 F.2d at 704. The *Brunner* test requires the debtor to make a three-part showing

in order to prove undue hardship: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal standard" of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner,* 831 F.2d at 396. However, under a *Brunner* analysis, if the bankruptcy court finds against the debtor on any of the three prongs of the test, the inquiry ends and the student loan is not dischargeable. *Id.*

We prefer a less restrictive approach to the "undue hardship" inquiry. *See Andrews*, 661 F.2d at 704. We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8)(B). Therefore, we continue–as we first did in *Andrews*–to embrace a totality-of-the-circumstances approach to the "undue hardship" inquiry. We believe that fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.

In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. *Id.*; *Andresen*, 232 B.R. at 132. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt–while still allowing for a minimal standard of living–then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation–including assets, expenses, and earnings–along with the prospect of future changes–positive or adverse–in the debtor's financial position. *Id*. at 141.

We take special note that some bankruptcy courts in our circuit have not acknowledged and followed the controlling *Andrews* standard in an "undue hardship" determination. We trust that this opinion will serve to clarify the applicable analysis in future cases.[10]

## IV.
### *Conclusion*

Given the level of confusion as to the applicable standard of review and the viability of *Andrews*, we remand this case to the BAP. On remand, the BAP shall consider the Bankruptcy Court's "undue hardship" determination applying a de novo standard of review.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[10] We favorably note that in the instant case the Bankruptcy Court utilized the controlling totality-of-the-circumstances approach in its "undue hardship" determination.