In re Katheryn Jane **FAKTOR**, Debtor.

Katheryn Jane Faktor, Plaintiff,

v.

United States of America, U.S. Department of Education, Defendant.

Bankruptcy No. 03–00894M.
Adversary No. 03–9056M.

United States Bankruptcy Court,
N.D. Iowa.

Feb. 19, 2004.

Robert S. Swanson, Clear Lake, IA, for Debtor.

## ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY

WILLIAM L. EDMONDS, Bankruptcy Judge.

Katheryn Jane Faktor seeks a determination that her student loan obligation is dischargeable pursuant to 11 U.S.C. § 523(a)(8). Trial was held January 6, 2004 in Mason City. Attorney Robert S. Swanson appeared for plaintiff Faktor. Defendant United States Department of Education was represented by Stephanie J. Wright, Assistant U.S. Attorney. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### Findings of Fact

Katheryn Faktor, age 51, lives in Mason City. She has two children, a son, 28, and a daughter, 23. Her son has one child and is employed in Texas. Her daughter, who is single and has a two-year-old child, attends LaJames College of Cosmetology in Mason City.

Faktor graduated from high school in 1970 and married in 1973. She is now a widow. Her late husband was employed at various jobs over the years. He did construction work for some time. At his last job, he drove a cement truck for a ready-mix company. While he was thus employed, he broke his foot and became disabled. His arch broke from complications of diabetes. He required extensive surgery and received treatment at Mayo Clinic. He had acquired no pension benefits from any of his employers. He received Social Security disability benefits and was eligible for Medicaid. Faktor's husband died in June 2000.

At the time that her husband became disabled, Katheryn Faktor was working at home in an upholstery shop. This business did not provide a steady source of income.

In 1988, Faktor began a degree program at North Iowa Area Community College (NIACC) in Mason City. She received an associate arts degree in May 1990. She then attended Iowa State University for one year, commuting each day to Ames. She completed her education through Buena Vista College, attending classes in Mason City. In May 1993 she received a bachelor of arts degree in elementary education. Her final grade point average was 3.377. She completed student teaching in Belmond and obtained a teaching certificate.

Faktor financed her education primarily with student loans. She borrowed a total of $15,000. She obtained a Perkins loan while she attended NIACC. Exhibit N indicates the loan was in the amount of $1,000. She received the following guaranteed loans through First State Bank in Thornton: $2,000 in August 1989; $4,000 in October 1990; $4,000 in June 1991; $4,000 in August 1992. Exhibit P.

From graduation to the date of trial, Faktor has made numerous applications for teaching positions, without success. She has applied for some positions outside the area where she lives. She is not hopeful about her prospects for finding employment as a teacher. She believes there are few positions available because of decreased enrollment. She said she applied for a position in Thornton for which there were hundreds of applicants for one opening.

In late 1993, Faktor began working at Alexander Technologies, Inc. as a temporary employee. She became a permanent worker in February 1994. This job provided her family with health insurance.

For some time while she was at Alexander Technologies, Faktor also had a second job working part time in the shoe department at Wal–Mart.

Faktor worked as an electronic technician at Alexander Technologies. She tested circuit boards and repaired battery chargers. The job involved repetitive hand work, lifting items weighing about 15 pounds, and moving them from side to side. She worked there until November 1, 2002, when the plant closed. Her final wage was $9.67 per hour. After losing her job with Alexander Technologies, Faktor received unemployment benefits of $257 per week. In 2002, Faktor had gross wages of $20,837, which included unemployment compensation of $1,799.

Faktor presently works part time at Hy–Vee in the floral department. She earns $7.00 per hour and works approximately 30 hours per week. A recent two-week paycheck netted her $351.54. She has no health insurance or other such benefits through Hy–Vee.

She receives partial unemployment benefits while she works part time. If she continues to work approximately 30 hours per week, she expects to receive benefits of about $75 per week. The unemployment benefits come from a fund built up while she was employed by Alexander Technologies. She believes there is approximately $3,000 remaining in the fund.

Faktor also has a seasonal business operating a concession stand at horse shows in Mason City. She began this business last summer and made a profit of approximately $2,500. The business involves working weekends from May through August. She expects to continue this business in the future and to earn about the same income.

Faktor has made several applications for employment outside the field of teaching and continues to do so. The owners of Alexander Technologies are in the process of reopening the plant. Faktor has inquired about employment there. The owners are offering a starting wage of $7.00 per hour. Faktor's former position is not open. She believes the management is being very selective about rehiring former employees of Alexander Technologies and does not think it is likely that she will be rehired.

In the past, Faktor has helped her daughter with transportation, child care and gifts of small amounts of money. When her daughter purchased a car, Faktor co-signed the note. In 1999, Faktor's daughter was in a motor vehicle accident and totaled the car. Because Faktor's daughter was unable to pay the car loan, the debt was added to Faktor's loans at the bank. She had a bank loan for her own car and another for living expenses, including income taxes and car expenses.

After her husband's death in 2000, Faktor discovered debts that he had incurred without her knowledge. Her husband had been in charge of the family's finances. He had a $10,000 life insurance policy. Faktor used the money to purchase a 1996 Chrysler vehicle and to buy a refrigerator.

In November 2001, Faktor consolidated her bank loans. The new note, in the amount of $11,680, was secured by a 1995 Dodge Caravan. The monthly payment was $250. Faktor was unable to repay this loan. In August 2002, a charge of $6,000 was made to loan loss reserves. The same month, $943.07 was applied to the loan, representing insurance proceeds for hail damage. In December 2002, the bank received $932.64, the proceeds of sale of the 1995 Dodge. The final balance on the loan was $3,334.34.

Faktor formerly lived at 208 Larch Avenue, Thornton. The mortgagee had threatened foreclosure. In July 2002, she

sold the house to pay off the mortgage and to satisfy judgments. Faktor received no proceeds from the sale.

When Faktor's student loans first came due, she applied for and received deferments of repayment of the loans. There was no evidence as to the date the deferment periods ended.

The Perkins loan obtained through NIACC has been paid. Faktor made some payments on the loan while she was employed by Alexander Technologies, and other amounts were applied to the loan after judgment and garnishment of her wages.

The government's Exhibit N lists the guaranteed loans. In 1995, the Iowa College Student Aid Commission purchased the loans as defaulted loans from the Iowa Student Loan Liquidity Corporation. In 1996, the loans were consolidated as a guaranteed "FFEL Consolidated" loan with a new principal balance of $17,497. Faktor made no payments after the loans were consolidated.

By at least November 2000, Faktor had enrolled in an "income contingent repayment plan." This plan was required because Faktor had defaulted on a consolidated loan. In May or June 2001, Faktor consolidated her defaulted loan under the Federal Direct Loan program. The interest accruing on the loan was capitalized to form a new principal balance of $30,588. Faktor was deemed in default on the consolidated Direct Loan on January 13, 2002. In March 2002, the Federal Direct Loan Service Center assigned the loan to the Department of Education's collection department. For a time, the account was serviced by Diversified Collection Services, a collection agency. It was later returned to the Department of Education.

Default on the direct loan made Faktor ineligible for payment options such as the income contingent repayment plan, under which the loan would be payable for a maximum of 25 years. The full amount of the loan became due and payable. Lola Hom, a loan analyst with the Department of Education, said that the collection department's policy, however, is to negotiate with the debtor for "reasonable and affordable" terms of repayment. The collection department does not have a specific plan that limits the term of years for which a loan is payable, and could continue collection efforts after a debtor has reached retirement age under Social Security. The Department and Faktor did not reach an agreement for repayment of the loan.

On March 17, 2003, Faktor filed a Chapter 7 petition. On April 10, 2003, she filed a complaint to determine the dischargeability of her student loan obligation. She received a discharge June 26, 2003.

Faktor owns no real property. On the date of her bankruptcy filing, her most significant items of personal property were an interest in a 401(k) plan valued at $4,851.94, and a 1996 Chrysler Concorde with 135,000 miles valued at $3,250. She had no secured or priority creditors. She scheduled general unsecured claims in the total amount of $76,138.67. The claims included her husband's medical bills and funeral expenses. Faktor listed student loan debts owed to Diversified Collection Services in the amount of $8,577.55 and the U.S. Department of Education in the amount of $42,887.75.

The latter amount was the balance shown on a final notice of wage garnishment issued by the Department of Education dated January 3, 2003. This figure included collection fees and costs. The Department of Education subsequently provided Faktor with a certificate of indebtedness stating that on May 12, 2001 she had executed a note for $30,588.19, that the balance of principal and interest

as of May 15, 2003 was $35,201.15, and that the debt accrues interest at an annual rate of 8%, or $6.70 per day. Lola Hom testified that the balance as of December 30, 2003 was $36,735.18.

In a statement given to the Department of Education in October 2003, Faktor listed the following monthly expenses:

| rent | 425 |
|---|---|
| home insurance | 19.20 |
| food | 200 |
| electricity | 67 |
| gas | 21 |
| water/sewer | 20 |
| garbage | 7 |
| telephone | 37 |
| clothing | 70 |
| medical | 55 |
| gas & oil for car | 60 |
| car insurance | 25.75 |

■ At trial, Faktor said her expenses are still approximately the same, except that utilities are somewhat higher in the winter. The court will assume gas and electricity will total an average of $100 per month. Faktor also pays $40 per month for cable TV and $20 for internet service. She uses the internet to search for job openings through NIACC. Internet access would not be a necessary expense after Faktor obtained employment. Moreover, it is a service available at the public library. Cable television is not a necessity, however, a minimal budget should allow for some recreation. *See Ivory v. United States (In re Ivory)*, 269 B.R. 890, 899 (Bankr.N.D.Ala.2001). This is so especially since the debt at issue, if not discharged, would be payable into the indefinite future. The court will eliminate the expenses for internet and cable, but allow $20 per month for recreation. Faktor may need to spend more for clothing than she did while she worked for Alexander Technologies, but an allowance of $70 is high. However, she did not include allowances for laundry, haircuts or miscellaneous items. The court will allow $50 for clothing and $20 for miscellaneous expense.

The listed medical expense is for thyroid medication, which will be an ongoing expense. Her thyroid condition is controlled with medication and does not affect her ability to work. She has been treated for tendonitis in her left elbow, a condition that began about two years ago. During treatment between November 2002 and February 2003, her physician recommended restrictions on lifting and repetitive motion. Faktor does not presently have health insurance. Based on the amount deducted from her paychecks at Alexander Technologies (Exhibit 1), the court will allow $64 per month for health insurance. The court finds that Faktor's reasonable and necessary monthly expenses, not including debt service, total $1,103.

Faktor does not have a car payment. In August 2003, she traded her 1996 Chrysler for a 1997 Plymouth Breeze. She purchased the vehicle for $1,200 in addition to the trade-in allowance, using money earned from her summer concession business.

Faktor took a number of loans from her 401(k) account through Alexander Technologies. Each new loan was made in an amount to pay off the prior loan and to provide Faktor with additional cash. She made loan payments by payroll deduction. A loan made in April 2002 was set up for repayment in 190 installments of $40.03 every two weeks. In April 2003, she withdrew the full balance of her account. After withholding taxes, she received

$3,841.20. Faktor used this money for attorney fees and living expenses. Prior to the final withdrawal from the 401(k) account, no amounts had been withheld for income taxes. Faktor has been advised that, under the terms of the 401(k) plan, closing the account triggered a taxable event that will require her to report a distribution of $4,178.42 of additional income for tax year 2003.

Nor were taxes withheld from Faktor's unemployment benefit checks. Assuming she received those benefits through October 2003 before she began working at Hy-Vee, she would have received approximately $11,051 of income from unemployment benefits ($257 × 43 weeks). Adding this to the income from her 401(k) distribution would make $15,229 of income from which taxes have not been withheld. At trial Faktor said she owed about $2,000 for attorney fees.

Faktor reported having about $550 in her checking account on the date of trial, $425 of which would be used for January rent, $105 in savings, and about $84 in an IRA.

### Discussion

■ Katheryn Faktor asks the court to determine that excepting the student loan obligation from her discharge would impose an "undue hardship" on her within the meaning of 11 U.S.C. § 523(a)(8). Debtor must prove the existence of undue hardship by a preponderance of the evidence. *Ford v. Student Loan Guarantee Found. of Ark. (In re Ford)*, 269 B.R. 673, 675 (8th Cir. BAP 2001).

"Undue hardship" is not defined by the Bankruptcy Code. For determining whether undue hardship exists, the Eighth Circuit Court of Appeals has established a "totality of the circumstances" test. *Long v. Educational Credit Management Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981). The Circuit Court held in *Long* that

[i]n evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position.

*In re Long*, 322 F.3d at 554 (citations omitted).

■ The court first concludes that dischargeability in this case depends on Faktor's future ability to pay the entire student loan obligation. The court will not consider that the Department of Education would accept payments under a modified repayment plan that has not yet been formulated. The size of the debt is relevant to the undue hardship issue. The court does not have the authority to modify the payment terms of a student loan or to discharge a partial amount of principal or accrued interest. *Hawkins v. Buena Vista College (In re Hawkins)*, 187 B.R. 294, 300–01 (Bankr.N.D.Iowa 1995); *see also Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127,

136–37 (8th Cir. BAP 1999) (criticizing "partial discharge" theory without deciding the issue). The debt at issue has a principal balance of $30,588, accrues interest at the rate of 8% per year, and has an unlimited term of repayment. The total balance of the loan as of December 30, 2003 was $36,735.18.

The court next considers Faktor's financial resources. Faktor is a college-educated, intelligent person. She is industrious and has operated her own business. She has no dependents. She does not have health problems that prevent her from working. Although Faktor has not thus far been able to obtain a teaching position and it is difficult to predict whether she will obtain such a position, the court cannot find that she will never do so. Even if the court were to assume that she will not obtain employment in her chosen field, that finding would not be dispositive. Faktor's college degree has increased her opportunities and income potential.

It is very difficult, however, to project Faktor's future earning capacity. Her employment history is limited. Since her graduation in 1993, she has worked at a factory for about nine years and has been self-employed on a small scale.

Faktor is presently working part time for $7.00 per hour. The court does not consider this a long-term prospect for her. She has the ability to earn at least this much on a full time basis. At this rate of pay, her gross monthly income would be $1,213.33. Assuming deductions of 25% for income tax withholding, Social Security and Medicare, her monthly net income would be approximately $910. Faktor stated that she would still be able to continue her concession stand business if she were working full time. Assuming annual profit of $2,500 from the business, she would have an additional $208 net income per month, for a total of approximately $1,118. Subtracting $1,103 for living expenses would leave a negligible amount for repayment of debt.

Considering Faktor's long-term prospects, it is reasonable to assume that she will eventually earn wages better than her present $7.00 per hour. There will also be changes in her expenses. The court assumes she will at some point pay her 2003 income taxes and her attorney fees. She will eventually need to replace her 1997 vehicle. It is difficult for the court to predict her future disposable income with any accuracy.

■ As an alternative measure of Faktor's ability to repay her student loan, the court will estimate the amount of disposable income necessary do so within a reasonable time. One panel of the Bankruptcy Appellate Panel for the Eighth Circuit has stated that a 25–year repayment term is not necessarily too long when considering whether repayment of a student loan would create undue hardship. *Long v. Educational Credit Management Corp. (In re Long)*, 292 B.R. 635, 639 (8th Cir. BAP 2003). Amortizing the principal, $30,588, over 25 years at 8% annual interest (using amortization calculator at <http://www.openhouse.net>), and adding an amount for payment of the approximately $6,000 of accrued interest in equal payments yields a monthly payment of approximately $250.

A salary of $25,000 would probably create enough disposable income to make such a monthly payment and still allow a minimal standard of living ($25,000 ÷ 12, less 25% for taxes = $1,563 per month; $1,563–$250 = $1,313 for living expenses). The court believes Faktor has the potential to earn this much eventually. It is less likely, however, that she has the ability to generate this level of income for 25 years. If Faktor were to obtain a well-paying

position immediately, she would be 76 years old at the end of 25 years. The court would have to assume that she would continue working 10 years beyond her normal retirement age. If some unforeseen event, such as a health problem, reduced her disposable income, the debt would be payable even longer. The court concludes that Faktor does not have the ability to repay the loan while maintaining a minimal standard of living.

■ The Department of Education contends that Faktor has acted in bad faith because she made no payments on the loans after they were consolidated. The Eighth Circuit Court of Appeals has rejected application of the three-part undue hardship test adopted in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987). *Long v. Educational Credit Management Corp.*, 322 F.3d 549, 553 (8th Cir.2003). The *Brunner* test requires the debtor to show that he or she has made a good faith effort to repay the student loan. *Brunner*, 831 F.2d at 396–97. Arguably, the court might consider a debtor's good faith effort to pay the loan, or a debtor's bad faith in making repayment, as one circumstance among the totality of circumstances considered under *Long.* I will assume without deciding that this is so.

■ A debtor's good faith is measured by her "efforts to obtain employment, maximize income and minimize expenses." *Matter of Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). The inquiry includes whether the debtor is culpable for causing her own poor financial health. *Id.* In this case, the court believes it should consider Faktor's financial condition over the entire history of the loans, not just the period during which the loan was in collection with the Department of Education.

When Faktor's student loans first came due in 1993, her children were about 13 and 18. Her daughter was still living at home and her husband was disabled. Later that year, Faktor began working at Alexander Technologies. There was no evidence as to her starting pay. For some time, she worked a second job. Over the years, Faktor struggled with the family's finances. She borrowed money for living expenses from her bank and from her 401(k) account. There was no evidence of spending on luxuries. It appears that Faktor made some payments on her guaranteed loans before they were consolidated. *See* Exhibit P, 1a. Her Perkins loan was repaid. When her husband died, there remained debts for his medical expenses and funeral. In 2002, she sold her home to pay the mortgage and other debts.

■ Faktor filed her bankruptcy petition several years after obtaining her degree, not "on the eve of a lucrative career." *See In re Andresen*, 232 B.R. at 130 (discussing policies behind § 523(a)(8)). She has not avoided paying her student loan in order to accumulate wealth for herself. Faktor owns a modest vehicle. She owns no real property, has no private retirement account, and has no health insurance. The court finds that Faktor has made a good faith effort to repay the debt. Finally, the court concludes that excepting the student loan from her discharge would impose an undue hardship. The loan should be discharged.

IT IS ORDERED that the student loan obligation of Katheryn Faktor owed to the United States Department of Education is dischargeable pursuant to 11 U.S.C. § 523(a)(8).