**In re Tina Louise BOTT, Debtor.**

**Tina Louise Bott, Plaintiff,**

v.

**Educational Credit Management Corp., Defendant.**

**Bankruptcy No. 03–20666–659.**
**Adversary No. 03–2019–659.**

United States Bankruptcy Court, E.D. Missouri, Northern Division.

April 29, 2005.

Fredrich J. Cruse, Hannibal, MO, Chapter 7 Trustee.

Harry D. Boul, Columbia, MO, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATHY A. SURRATT–STATES, Bankruptcy Judge.

The matters before the Court are Plaintiff's Complaint Seeking Hardship Discharge of Student Loans Under Section 523(a)(8) and Answer of Educational Credit Management Corporation. A Motion to Substitute Parties was filed by Defendant Educational Credit Management Corporation ("ECMC") substituting ECMC for Defendant Sallie Mae Servicing Corporation on October 22, 2003. An Order granting ECMC's Motion to Substitute Parties was entered on December 1, 2003. A Scheduling Order was entered on December 8, 2003, setting a trial date of March 25, 2004. This trial date was continued to June 24, 2004, and then to August 26, 2004, at the request of ECMC. The trial on this matter was held on August 26, 2004, at which Plaintiff appeared in person and by counsel and ECMC appeared by counsel. Plaintiff was the only witness at the trial. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT:**

Tina Louise Bott ("Plaintiff") filed for relief under Chapter 7 of the United States Bankruptcy Code on November 19, 2002, and received a discharge on April 30, 2003. Plaintiff is indebted to ECMC for an unpaid balance owed on a promissory note, which consolidated various student loans. Plaintiff executed the note evidencing consolidation of said student loans on August 3, 1995. The unpaid balance on the promissory note (the "Note") was $88,850.92, as of August 26, 2004, and provides for a variable rate of interest, which is presently nine percent (9%) per annum.

Plaintiff is a 40 year old single mother, having the care and custody of two dependent children, ages 12 and 15. Plaintiff's education and training beyond high school have been directed towards her goal of becoming a licensed social worker. She holds both a bachelor's degree in psychology and a master's degree in social work. However, Plaintiff is an alcoholic and a drug addict, with a history of many years of abuse of alcohol and controlled substances, depression, and emotional problems. Plaintiff also has Hepatitis C, but her condition has stabilized and is in remission. Plaintiff is now sober and a contributing member of a church community despite her history of substance abuse.

Plaintiff has six (6) felony convictions including driving while intoxicated, possession of controlled substances, and possession of controlled substances with intent to manufacture. Plaintiff argues that she is ineligible to become a licensed social worker due to her criminal history and believes that since she cannot find employment in her chosen field, she is entitled to discharge the Note. Consequently, Plaintiff argues that not allowing her to discharge the Note will result in an undue hardship in that Plaintiff will never qualify for a future home or car.

Plaintiff held a variety of occupations since she graduated with her master's degree. Plaintiff worked as a disability case manager after completing her graduate program. Plaintiff terminated her employment as a case manager and was thereafter employed as a waitress for two

(2) years earning $200.00 per week. Plaintiff left her waitress position and was employed at a card factory for one (1) year and six (6) months earning $5.75 per hour. Plaintiff left her position at the card factory and found employment at a meat processing plant where she worked for six (6) months earning $7.20 per hour. Plaintiff thereafter left her position at the meat processing plant and found employment as a case manager at a convalescent center where she earned $1,500.00 per month. However, Plaintiff found that she did not fit into the work environment at the convalescent center and resigned from her position six (6) months later. Plaintiff then found a position as an activity coordinator where she earned $6.50 per hour; however, she found that she could not cope with the demands of that position and resigned. Plaintiff is currently employed as a cashier at a fast food restaurant in Moberly, Missouri, where she earns $6.75 per hour.

The Note was executed pursuant to and is governed by the Higher Education Act. The Note is a promise to pay a debt for an educational benefit, overpayment or loan made, insured or guaranteed to a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

ECMC has a charter relationship with the United States Department of Education and functions as a specialized guaranty agency for student loans whose debtors are in bankruptcy and a traditional guarantor for student loans insured or guaranteed under the Federal Family Educational Loan Program. The William D. Ford Loan Consolidation Program offers several flexible consolidation options, designed to help borrowers meet their student loan obligations even in times of financial hardship. The Income Contingent Repayment Plan ("ICRP") is a consolidation option that allows the borrower to receive a graduated payment plan, extend the payments up to 25 years, depending on the loan balance, or make a monthly payment that is contingent upon his or her disposable income.

The Note is eligible under ICRP, so Plaintiff's monthly payment will be based upon an annual review of her adjusted gross income, family size, and the poverty guidelines set by the Department of Health and Human Services ("HHS"). If Plaintiff were to consolidate under ICRP, she would be eligible to apply for deferments and forbearances, which would allow her to discontinue her monthly payments during periods of financial hardship, unemployment, or future in-school enrollments.

ECMC unilaterally reduced the Note from $88,850.92 to $60,000.00 in principal. The monthly payment required to amortize an obligation of $60,000.00 at nine percent (9%) interest over a 25–year repayment period would be $503.52. If Plaintiff elected to pay her $60,000.00 loan obligation over 25 years under ICRP, her present payment would be zero. Thereafter, her payment would be 20% of her income over the HHS poverty guidelines for a family of her size.[1]

### JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2003), and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1) (2003). Venue is proper under 28 U.S.C. § 1409(a) (2003).

### CONCLUSIONS OF LAW

Under Section 523(a)(8), "[a] discharge under section 727 . . . of this title does not

---

1. 34 C.F.R. § 685.209(a)(2)(ii) (2005).

discharge an individual debtor from any debt—(8) for an educational...loan made, insured, or guaranteed by a governmental unit...unless excepting such debt from discharge...will impose an undue hardship on the debtor and the debtor's dependents..." 11 U.S.C. § 523(a)(8) (2004). The policy behind this provision is "to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligation from doing so." *Long v. Educational Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir.2003).

Since the Bankruptcy Code is silent on the definition of undue hardship, Circuit Courts have wrestled with the definition of "undue hardship" under Section 523(a)(8). Consequently, there is a split among the Circuit Courts involving the meaning of "undue hardship." [2] However, this matter was settled in the Eighth Circuit by *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981), out of which the "totality of the circumstances approach" emerged as the applicable standard. In *Long*, the Eighth Circuit reaffirmed its resolve to create "a less restrictive approach to the 'undue hardship' inquiry." *In re Long*, 322 F.3d at 554.

■ Consequently, Bankruptcy Courts in the Eighth Circuit are obliged to consider the "totality-of-the-circumstances" approach in light of the following factors: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant

facts and circumstances surrounding each particular bankruptcy case." *Id.* (citing *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 140 (8th Cir. BAP 1999)). A determination of a debtor's future financial resources is made based on the "[debtor's] anticipated future income and expenses." *Standfuss v. U.S. Dep't of Educ. (In re Standfuss)*, 245 B.R. 356, 360 (Bankr.E.D.Mo.2000). This determination is made in light of the testimony and evidence produced at the hearing. *Id.*

■ "[T]he debtor has the burden of proving by a preponderance of the evidence that her circumstances warrant a discharge of the student loans on the basis of undue hardship." *Ford v. Student Loan Guar. Found. of Ark. (In re Ford)*, 269 B.R. 673, 677 (8th Cir. BAP 2001). Therefore, the principal inquiry before this Court is whether the Plaintiff can show that her future financial resources will not sufficiently cover repayment of the Note while still allowing the minimal standard of living based on the facts and circumstances of this case. The Court considers each factor below.

### I. Past, Current and Future Financial Resources

■ The first factor requires careful consideration of Plaintiff's past, current, and future financial resources. Plaintiff argues that she has six (6) felony convictions, which preclude her from obtaining a position as a social worker. Plaintiff obtained five (5) of her six (6) convictions after she earned her degrees when she

---

**2.** *Compare In re Long*, 322 F.3d at 554, reaffirming the "totality-of-the circumstances approach to the 'undue hardship' inquiry," *with Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987) (requires the debtor to make a three-part showing in order to prove undue hardship: (1) that the debtor cannot maintain, based on current income

and expenses, a "minimal standard" of living for herself and her dependents if forced to repay loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans).

relapsed into alcoholism and drug addiction. Although it is uncertain what impact said convictions may have on Plaintiff's ability to pursue a career in social work, criminal convictions do impose some limitations on one's ability to pursue certain occupations. However, Plaintiff testified that she never applied for licensure as a social worker in the State of Missouri, so her criminal convictions alone are not necessarily determinative.

The fact remains that Plaintiff is well educated and undoubtedly has transferable skills that will allow her to obtain a more lucrative career than merely low wage jobs. It is therefore possible that some employers may be willing to look past Plaintiff's transgressions and offer her employment. This possibility of more lucrative employment, viewed in light of Plaintiff's criminal convictions alone, preclude this Court from reaching the conclusion that Plaintiff's criminal convictions will prevent her from obtaining future employment.

Plaintiff also argues that she has chronic health problems that preclude her from working long hours required by more lucrative occupations. More specifically, Plaintiff suffers from depression, obesity, and chronic Hepatitis C. However, Plaintiff admits that neither her depression nor her obesity prevents her from obtaining and maintaining gainful employment. This fact is evident upon reviewing Plaintiff's employment history. Plaintiff has held various occupations since she graduated from her master's program and has earned as much as $1,500.00 per month in one position. Furthermore, Plaintiff is in full remission from her Hepatitis C. Therefore, the Court finds that Plaintiff's health problems will not prevent Plaintiff from obtaining additional or more lucrative employment in the future.

## II. Reasonable Necessary Living Expenses

The second factor requires careful consideration of Plaintiff's necessary living expenses. Plaintiff listed a total monthly income of $1,095.50 on her Schedule I, which is comprised of wages and tips. Debtor listed expenses of $1,922.50 on her schedule J. There is a shortfall of $827.00 in Plaintiff's budget. Plaintiff's expenses include:

| | |
|---|---|
| Rent | $340.00 |
| Electricity & Heating Fuel | 120.00 |
| Water and Sewer | 35.00 |
| Telephone | 50.00 |
| Cable TV | 40.00 |
| Home Maintenance | 25.00 |
| Food | 600.00 |
| Clothing | 55.00 |
| Laundry and Dry Cleaning | 50.00 |
| Medical and Dental Expenses | 100.00 |
| Transportation (not including car payments) | 125.00 |
| Recreation | 55.00 |
| Charitable Contributions | 25.00 |
| Renter's Insurance | 10.00 |
| Auto Insurance | 75.00 |
| Student Loans | 50.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | 2.50 |
| Household Supplies & Personal Care | 90.00 |
| (Special Occasions) Holiday, Birthday & Vacation | 75.00 |

Plaintiff has a modest standard of living overall based upon review of Plaintiff's Schedules I and J filed on November 19, 2003. However, the Court has concerns regarding Plaintiff's telephone, Cable TV, food, recreation, auto insurance, student loans, household/personal care, and special occasions expenses. Consequently, the Court believes Plaintiff could make several adjustments in her budget to reduce her $827.00 budget shortfall.

Plaintiff can find a basic telephone service to reduce her telephone bill from

$50.00 to $30.00. Plaintiff can eliminate the $40.00 that she currently pays for Cable TV. Plaintiff should not be allowed to have such luxuries if she cannot afford to make payments to ECMC. Plaintiff can also reduce her food expense from $600.00 to $400.00, even though Plaintiff lives with her two teenage daughters. The food expense is excessive in light of Plaintiff's claim that she cannot afford to pay the Note. Furthermore, Plaintiff's two daughters are merely three years and five years, respectively, from reaching the age of majority, so Plaintiff's food expenses will decrease over the next several years.

Plaintiff can eliminate or halve her recreation expenses from $55.00 to $27.50. Plaintiff testified at the hearing that she did not own or lease an automobile, yet she lists an auto insurance premium of $75.00. Plaintiff can eliminate this expense from her budget since she does not in fact own an automobile. Ironically, Plaintiff lists a student loan payment of $50.00 even though she testified that she has paid under $500.00 on the Note and is currently not making any payments, so this item should not be included as an expense in this analysis. Plaintiff can reduce her household supplies and personal care from $90.00 per month to $50.00 per month. Plaintiff can also reduce her monthly budget item for special occasions from $75.00 to $40.00. Plaintiff can therefore reduce her budget shortfall from $827.00 to $339.50 by making the aforementioned adjustments. Consequently, the Court finds that although a shortfall currently exists in Plaintiff's budget, Plaintiff's anticipated expenses are likely to decrease over the next few years as her daughters reach the age of majority thereby increasing her ability to repay the Note.

### III. Other Relevant Facts and Circumstances

The last factor requires careful consideration of other relevant facts and circumstances. Plaintiff's health condition has improved and she is now an active member of a church community, which demonstrates that Plaintiff is well on her way to getting her life together. This transformation is remarkable given that Plaintiff has struggled with drug addiction throughout her life as a result of unfortunate events during her childhood. Plaintiff earned and holds two college degrees, a bachelor's degree in psychology and a master's degree in social work. Plaintiff's past achievements coupled with her current condition demonstrates that she has the ability to turn her life around and find better employment.

Furthermore, ECMC reduced the Note from $88,850.92 to $60,000.00 on the date of trial. Plaintiff's obligation has therefore been reduced by 31% of the original balance. In addition, Plaintiff is eligible for ICRP and is not required to make student loan payments until she has discretionary income under HHS guidelines. Plaintiff does not have discretionary income at the present time, yet her financial fortunes may improve in the years to come. Plaintiff is therefore not required to make payments to ECMC at the present time. Debtor has a 25–year window to make some payment on the Note under ICRP with the Secretary of Education. *In re Long,* 292 B.R. at 639. Otherwise, the Secretary of Education will discharge the Note thereby releasing her from repayment during her golden years.

█ Nevertheless, Plaintiff refuses to participate in ICRP although her current payment would be zero. This fact troubles the Court, since Plaintiff's principal concern for not participating in ICRP is that her student loan debt would impact her credit rating and prevent her from obtaining future credit for a home and car. These facts illustrate that Plaintiff exhibits a lack of good faith in pursuing her undue

778

hardship discharge in this case. Consequently, Plaintiff has failed to meet her burden of proof that some payment on the Note would result in an undue hardship.

By separate order, the student loan debt will not be discharged.

### *ORDER*

The matter before the Court is Plaintiff's Complaint Seeking Hardship Discharge of Student Loan Under 11 U.S.C. § 523(a)(8). For the reasons set forth in this Court's Findings of Fact and Conclusions of Law entered separately,

**IT IS ORDERED THAT** the relief requested in Plaintiff's Complaint is DENIED in that Plaintiff's request to discharge student loans is DENIED and judgment is entered in favor of Defendant in that the student loan debt is NOT discharged; and this is the final judgment and order of the Bankruptcy Court in this case.