# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 17-6022

_____

In re: Amy N. Piccinino

*Debtor*

------------------------------

Amy N. Piccinino

*Plaintiff - Appellant*

v.

U.S. Department of Education

*Defendant - Appellee*

Aspire Resources, Inc.

*Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri

_____

Submitted: November 7, 2017
Filed: December 7, 2017

_____

Before SALADINO, Chief Judge, SHODEEN and DOW, Bankruptcy Judges.

_____

SHODEEN, Bankruptcy Judge,

Plaintiff, Amy Piccinino, appeals from the Bankruptcy Court's[1] determination that she failed to meet her burden of proof to establish an undue hardship pursuant to 11 U.S.C. §523(a)(8) to discharge her student loans owing to the United States Department of Education and Aspire Resources, Inc. For the reasons that follow, we affirm.

BACKGROUND

In 2011 Piccinino obtained a bachelor's degree in anthropology. Following graduation she participated in a volunteer internship position in her field of study. From 2011 until May 2013 Piccinino did not work. Since that time she has only worked in part-time positions. To finance her education Piccinino borrowed funds from Department of Education ("DOE"), Aspire Resources, Inc.[2] ("Aspire") and The Scholarship Foundation. No payments have been made on any of these student loans and at the time of trial these lenders were owed more than $79,000.

In a detailed ruling the Bankruptcy Court concluded that the DOE and Aspire loans were not eligible for discharge based upon undue hardship.[3] Piccinino appeals this decision raising two primary arguments. First, that the Bankruptcy Court engaged in speculation related to her employment history, search for employment, future employment and her housing expense. Second, that the Bankruptcy Court committed error by misinterpreting, discounting or ignoring

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] Aspire services the loan on behalf of Iowa Student Loan Liquidity Corporation, the holder of the promissory note.

[3] The Bankruptcy Court concluded that the obligation owed to The Scholarship Foundation was subject to discharge and that determination was not appealed.

the evidence of Piccinino's unique and unusual circumstances in reaching its conclusion that she does not qualify for discharge of her student loans.

## STANDARD OF REVIEW

The determination of undue hardship is a legal conclusion subject to de novo review. *Long v. Educ. Credit Mgmt. Corp. (In re Long),* 322 F.3d 549, 553 (8th Cir. 2003). Subsidiary findings of fact underlying any legal conclusions are reviewed for clear error. *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009). This standard requires a reviewing court to conclude that the trial court made a definite mistake based upon the record as a whole. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). The trial court's findings of fact are given deference and when more than one interpretation of evidence is possible there is no clear error. *Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985).

## DISCUSSION

Student loans can only be discharged in bankruptcy when repayment would constitute an "undue hardship on the debtor [or] the debtor's dependents . . ." 11 U.S.C. § 523(a)(8). It is the plaintiff's burden to prove an undue hardship by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 289-91 (1991). The term "undue hardship" is not defined by the Bankruptcy Code leaving the courts to develop standards to evaluate whether such a condition exists. A majority of courts follow the test adopted by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.* 831 F.2d 395, 396 (2d Cir. 1987). The Eighth Circuit expressly rejected the *Brunner* analysis in favor of a more flexible totality of the circumstances test to assess whether repayment of student

loans would constitute an undue hardship. *In re Long*, 322 F.3d at 553-54; *Shadwick v. U.S. Dep't of Educ.*, 341 B.R. 6, 11 (Bankr. W.D. Mo. 2006). This test establishes three areas of inquiry: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and [any] dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *In re Long*, 322 F.3d at 554.

1. Past, Present and Future Financial Resources

Piccinino is a thirty-year-old single mother to a six-year-old daughter for whom she receives no child support. Her annual income from 2013 through 2015 ranged from $4,250 to $9,674 from part-time employment. Piccinino's current monthly income is derived from her employment at $850 per month as a substitute teacher during the school year and $800 per month in July and August when she provides childcare. Monthly SNAP benefits in the amount of $319 supplement her monthly income. She and her daughter are also qualified for Medicaid assistance. In 2016 Piccinino received a federal income tax refund in the amount of $4,364[4]. The Bankruptcy Court found that the combination of all of these sources indicate that Piccinino's annual income is $17,442, which amounts to $1,453.50 a month. Piccinino raises only one issue with this income finding. She argues that it is incorrect to include a portion of her tax refund as part of her monthly income because it is received annually in a lump sum. Due to the variances in Piccinino's income throughout the year it is appropriate for this amount to be averaged and included as part of her available monthly financial resources.

The Bankruptcy Court found that: "Although some limitations on the Debtor's retention of full-time employment have been out of her control, the

---

[4] There was no evidence provided as to any state income tax refunds received.

Debtor's underemployment is, to a certain extent, self-imposed." Piccinino also challenges the Bankruptcy Court's "speculative conclusion that her working only part-time has been voluntary" and references a notebook[5] that contains details about her unsuccessful attempts to obtain employment in 2011 and 2012. The record reflects that she has made employment choices based upon restrictions she has imposed. She decided not to work at all for a two year time period. After 2012 there is no evidence that she considered full-time employment as an option. Due to her lack of family support Piccinino justifies her part-time work because she must care for her daughter. She also states that she is unable to obtain work that will pay enough to cover the cost of childcare, although she presented no evidence to support this assertion. Piccinino appears to suggest that her minimal income and part-time work is inevitable and serves to predict her future earning capability. This position fails to acknowledge that when her daughter starts school her need for childcare will naturally decrease. Piccinino rejects this analysis claiming that there will be additional expenses for her daughter related to school and other activities that will offset any childcare savings. The record contains no quantitative detail to support this opinion.

Based upon the evidence of her age, health, skill sets and abilities Piccinino has failed to meet her burden to demonstrate that her future employment opportunities will not result in higher wages and full time employment. See *Jesperson,* 571 F.3d at 780.

---

[5] The docket reflects that Piccinino filed a document described as "Designation of Items to be Included in Record of Appeal," but the identified exhibits were not transmitted to the Clerk for docketing. Consequently, a review of the facts under the clearly erroneous standard is necessarily limited to the trial transcript and the exhibits identified and supplied by the DOE and Aspire in their joint Designation of Record on Appeal which does not include the notebook referenced by Piccinino.

2.    Reasonable and Necessary Living Expenses

"To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *Id.* (citing *DeBrower v. Pa. Higher Educ. Assistance Agency*, 387 B.R. 587, 590 (Bankr. N.D. Iowa 2008)). A debtor is entitled to "sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment" to maintain a minimal standard of living. *Nielsen v. ACS, Inc. (In re Nielsen)*, 473 B.R. 755, 760 (B.A.P. 8th Cir. 2012) (citing *Brown v. Am. Educ. Servs., Inc.*, 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007)). If Piccinino's "reasonable future financial resources will sufficiently cover payment of the student loan debt - while still allowing a minimal standard of living - then the debt should not be discharged." *Jesperson*, 571 F.3d at 779 (citing *In re Long*, 322 F.3d at 554-55).

Piccinino's current monthly income is $1,453.50 and she identifies monthly expenses totaling $1,476.00. Taken at face value there is a shortfall between her income and expenses in the amount of $22.50 a month. On appeal Piccinino argues that this information was submitted in an effort to provide general information as to her "fixed expenses" and does not include other variable monthly expenses. She defines these variable expenses as "very real and occur normally in each of our lives" and as not being easily quantified. No insight into the number or amounts of anticipated variable expenses was supplied which prevents any such items from being considered in evaluating Piccinino's reasonable and necessary living expenses.

Piccinino argues the Bankruptcy Court speculated her mother would forego rent payments so the student loan obligations could be paid. The actual amount of her monthly housing expense was called into question. Piccinino states that she pays monthly rent of $500 to live in a portion of her mother's home. This amount is admittedly based upon what would be charged to an unrelated third party. There

is no agreement in place between mother and daughter as to the amount of rent to be charged and no records have been kept to reflect the amounts that have actually been paid. With her mother's consent she pays rent when she can in any amount. Piccinino asserts that her mother would like to sell the home which will result in a future rent expense. Due to the lack of evidence that her mother has taken any affirmative action to sell the real estate her current intent to do was not substantiated. Piccinino bears the burden of proving she has no funds in excess of her expenses, and therefore cannot make payments towards her student loans. Based upon the parties' arrangement it is plausible to conclude that Piccinino's rent expense is less than $500, is not routinely paid and therefore changes the net amount of her available monthly income. See *Jesperson*, 571 F.3d at 780; see *Hurst v. S. Ark. Univ.,* 553 B.R. 133, 138 (B.A.P. 8th Cir. 2016).

Prior to filing bankruptcy Piccinino contacted each of her lenders to request a modification of her student loans. Notwithstanding her position that she lacks sufficient net income to pay her student loans, Piccinino's offers to make modest payments to her lenders indicate she believes she is able to pay some amount on her loans.

Based on the foregoing, the Bankruptcy Court found Piccinino has sufficient income in excess of her expenses to make modest monthly payments to her lenders. This conclusion is amply supported by the evidence.

3.     Other Relevant Facts and Circumstances

This factor permits evaluation of a wide range of facts and issues that may be relevant to determining undue hardship, including:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has

made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

*Brown,* 378 B.R. at 626-27 (citing *VerMaas v. Student Loans of N.D. (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Ark.,* 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002)). These numerous factors do not provide an exclusive list of items that courts may consideration and also do not require a court to address each and every one in a particular case.

Self-imposed restrictions are relevant to a determination of undue hardship. *Jesperson*, 571 F.3d at 782 (citing *Loftus v. Sallie Mae Servicing*, 371 B.R. 402, 410-11 (Bankr. N.D. Iowa 2007)). Piccinino's employment decisions and her perception of future employment prospects reflect elements of self-imposed conditions which weigh against dischargeability.

Piccinino explains that she sustained a shoulder injury in a car accident at the fault of an uninsured driver which required some medical attention. She also has dental concerns which she cannot afford to address. No medical evidence was supplied to demonstrate that these conditions have resulted in an impairment that prevents Piccinino from working.

The availability of a repayment plan is another singular factor that can be considered when evaluating whether undue hardship exists. *Lee v. Regions Bank Student Loans,* 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006). "[A] student loan should not be discharged when the debtor has 'the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program.'" *Jesperson*, 571 F.3d. at 781 (citing *In re*

*VerMaas*, 302 B.R. at 660). The DOE approved Piccinino's application to participate in the Income Driven Repayment Plan which permits her to pay as she earns. Based upon her current circumstances the monthly payment calculated under this program is $0.00. No clear error is present in the Bankruptcy Court finding that Piccinino has sufficient funds to make these payments.

Piccinino points to taxes she may owe at the end of the repayment period as an additional basis for discharge of her student loans. We have previously concluded that the "mere possibility" of tax liability is not dispositive of undue hardship. *In re Nielsen,* 473 B.R. at 762.

Whether the dominant purpose of a bankruptcy filing is to discharge student loans is also relevant to a determination of undue hardship. Admittedly, Piccinino's filing was done in an attempt to eliminate her student loan debt. This intent is further corroborated by the ratio of student loan debt which constitutes over 98% of her total debt.

## CONCLUSION

For the reasons stated above, Piccinino has failed to demonstrate that any of the factual findings by the Bankruptcy Court were clearly erroneous. Further, the Bankruptcy Court carefully analyzed the facts presented under the relevant categories and nothing in our de novo review of the record supports a different outcome. Accordingly, the Bankruptcy Court's order is AFFIRMED.

———————————————