# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6020

_____

In re:                                              *
                                                    *
Erik J. Nielsen and Kathryn R. Nielsen,             *
                                                    *
    Debtors.                                        *
                                                    *
                                                    *
                                                    *
Erik J. Nielsen,                                    *
                                                    *  Appeal from the United States
    Plaintiff - Appellant,                          *  Bankruptcy Court for the
                                                    *  Southern District of Iowa
        v.                                      *
                                                    *
ACS, Inc.,                                          *
                                                    *
    Defendant,                                      *
                                                    *
Educational Credit Management                       *
Corporation,                                        *
                                                    *
    Intervenor Defendant - Appellee.                *
                                                    *

_____

Submitted:  June 21, 2012
Filed: July 9, 2012

_____

Before KRESSEL, Chief Judge, FEDERMAN, and SALADINO, Bankruptcy
Judges.

_____

SALADINO, Bankruptcy Judge.

Plaintiff, Erik J. Nielsen, appeals from an order of the bankruptcy court[1] dated February 28, 2012, finding his student loan obligations to Educational Credit Management Corporation ("ECMC") to be nondischargeable. For the reasons stated below, we affirm.

Mr. Nielsen and his spouse, Kathryn R. Nielsen, filed a joint voluntary Chapter 7 case on October 7, 2009. On January 21, 2010, Mr. Nielsen commenced an adversary proceeding seeking a determination that his student loans were discharged based upon undue hardship pursuant to 11 U.S.C. § 523(a)(8). A motion to intervene was granted as to ECMC and a trial took place on November 2, 2011.[2] The bankruptcy court found that Mr. Nielsen failed to meet his burden of proof and denied his complaint.

## FACTUAL BACKGROUND

Acting pro se at trial (and in this appeal), Mr. Nielsen provided a written narrative to serve as his direct testimony. Mr. Nielsen took the witness stand to authenticate his written narrative and to respond to questions from ECMC on cross-examination. In addition to the written narrative and Mr. Nielsen's testimony on cross-examination, the bankruptcy court also considered all exhibits, arguments, statements, and information supplied in each of the student loan adversary proceedings, whether filed by Kathryn or Erik Nielsen. Ultimately, the bankruptcy court found that Mr. Nielsen failed to meet his burden of showing his student loans

[1]The Honorable Anita L. Shodeen, United States Bankruptcy Judge for the Southern District of Iowa.

[2]This adversary and two adversaries naming Kathryn R. Nielsen as plaintiff were at one time consolidated for purposes of discovery and trial. However, shortly before the November 2, 2011, trial date, the cases naming Kathryn R. Nielsen as plaintiff were continued for trial at a later date. The trial proceeded as to the adversary proceeding involving Erik J. Nielsen only.

2

were dischargeable based upon undue hardship. Unfortunately, the record transmitted to us on appeal fails to include any of the exhibits used at trial and the exhibits do not appear in the bankruptcy court's electronic records. Therefore, the facts described in this opinion are taken from the bankruptcy court's order and Mr. Nielsen's written narrative.

After high school, Mr. Nielsen obtained an associate's degree in Applied Science for Electronic Engineering Technology from ITT Technical Institute. He subsequently pursued a bachelor's degree at the University of South Dakota on a part-time basis, but did not complete the program. To finance his education, Mr. Nielsen incurred student loans from U.S. Bank. The loans were consolidated in 2005 and, at the time of trial, had a total outstanding balance of $48,361.00. The Nielsens are married with three young children (a fourth child was born subsequent to the trial). Kathryn Nielsen has obtained a master's degree but is not employed outside the home. She has her own student loan debt for which she is seeking discharge in two other adversary proceedings.

Mr. Nielsen has been continually employed outside the home in his chosen field. He worked for Mediacom from April 2001 until September 2008, when he began working as a service technician for an entity identified as Counsel Office and Documents. While working for Mediacom , Mr. Nielsen apparently suffered various work injuries, including the breaking of both wrists in 2003, for which he was paid a worker's compensation claim. Despite Mr. Nielsen's recovery, his injuries over time made it increasingly difficult to work outside in various types of weather and to handle large ladders. For that reason, he changed jobs in 2008 despite taking a pay cut from the $30,000.00 per year he was earning at Mediacom. According to the bankruptcy court opinion, his tax returns for the calendar year 2010 reflected gross wages of $26,071.00. However, at the time of trial, Mr. Nielsen testified that his salary was approximately $30,000.00 per year and he listed a gross salary of

$2,499.99 per month (approximately $30,000.00 per year) in Schedule I. He also obtains health, vision, and dental insurance through his employer.

In addition to Mr. Nielsen's income, the family also receives government assistance on a monthly basis. Under the Supplemental Nutrition Assistance Program ("SNAP"), the family receives food stamps of $316.00 per month and also receives benefits under the Women, Infants, and Children Program ("WIC") to help with food expenses. Further, Mr. Nielsen receives periodic bonuses and a cell phone allowance of $50.00 per month, and the family has consistently received annual combined tax refunds of approximately $8,000.00 per year.

## STANDARD OF REVIEW

"Undue hardship 'is a question of law which we review de novo. Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error.'" *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009) (quoting *Reynolds v. Pennsylvania Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 531 (8th Cir. 2005)). We will not upset the bankruptcy court's findings of fact unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *Walker v. Sallie Mae Servicing Corp. (In re Walker),* 650 F.3d 1227, 1230 (8th Cir. 2011) (citing *Cumberworth v. U.S. Dep't of Educ. (In re Cumberworth),* 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006)).

## DISCUSSION

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s

4

exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that his educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005). "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Jesperson*, 571 F.3d at 779 (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted).

Mr. Nielsen's brief on appeal fails to comply with the rules governing appeals. At best, it can be described as a disjointed narrative that attempts to describe no less than 34 ways in which he believes the bankruptcy court erred in denying discharge of his student loans. For most of the asserted errors, he fails to cite to any portion of the record on appeal and at times he references documents that he failed to include in the record. Since the appellant has the burden to demonstrate the merits of his appeal, he must bear the burden of deficiencies in the record. *Bergman v. Webb (In re Webb),* 212 B.R. 320, 322 n.1 (B.A.P. 8th Cir. 1997);[3] *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) (pro se litigants are not excused from compliance with substantive and procedural law). He also raises many issues that were matters within the bankruptcy court's discretion[4] or that were never presented to the bankruptcy court in the first instance. *First Bank Investors' Trust v. Tarkio Coll.*, 129 F.3d 471, 476-77 (8th Cir. 1997) (appellate court ordinarily will not consider issues not presented to bankruptcy court in first instance).

In any event, the bankruptcy court's decision regarding undue hardship must be reviewed de novo. Therefore, we will separately examine each factor of the totality-of-the-circumstances test.

---

[3] Federal Rule of Bankruptcy Procedure 8006 requires that within 14 days after filing the notice of appeal, the appellant must designate the items to be included in the record on appeal and a statement of issues to be presented.

[4] For example, Mr. Nielsen now claims that he was denied the right to have his wife testify (she was ill on the date of trial) when his motion to continue trial was denied by the bankruptcy court. He did initially attempt to appeal the denial of his motion to continue, but we dismissed that appeal as moot since the trial had been held. Mr. Nielsen did not raise that issue again in his notice of appeal herein. In any event, the bankruptcy court's decision to deny his motion was not an abuse of its discretion.

A.    Mr. Nielsen's Past, Present, and Reasonably Reliable Future Financial Resources.

Mr. Nielsen has at all material times been employed full-time in his chosen field as a service technician. His gross income is presently around $30,000.00 per year and he testified that he does have room for advancement in his current job. He enjoys his job and has not explored a move from rural Iowa to seek higher paying employment elsewhere. Mr. Nielsen also believes that obtaining a second job, or a higher paying job, would jeopardize the government benefits his family currently receives under the SNAP and WIC programs, though he produced no evidence to support that belief or any analysis of the effect on his overall financial situation. Kathryn Nielsen holds a master's degree, but does not work outside the home due to their family situation and choices they have made. According to Mr. Nielsen's testimony, his wife spends all of her time working on the paperwork for the bankruptcy and adversary proceedings and raising their young children. Mr. and Mrs. Nielsen plan to homeschool their children for personal and religious reasons. As the bankruptcy court noted, that decision will affect the ability of Kathryn Nielsen to seek employment outside the home.

The bankruptcy court noted that Mr. Nielsen has had steady employment in his chosen field and he asserted an ability to advance within his company in the future. The bankruptcy court also found that the Nielsen family receives insurance benefits through Mr. Nielsen's employment and that he receives periodic bonuses ($1,000.00 in 2010 and a smaller amount in 2011) as well as a $50.00 monthly cell phone allowance. The bankruptcy court also found that large tax refunds of approximately $8,000.00 per year have been typical and that those refunds are likely to continue into the future. Based on the limited record, we do not see any error in the bankruptcy court's analysis of Mr. and Mrs. Nielsen's past, present, and reasonably reliable future financial resources.

B.      Reasonable and Necessary Living Expenses.

The record on appeal is very sparse with respect to Mr. and Mrs. Nielsen's reasonable and necessary living expenses. "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *Jesperson*, 571 F.3d at 780 (quoting *DeBrower v. Pennsylvania Higher Educ. Assistance Agency (In re DeBrower)*, 387 B.R. 587, 590 (Bankr. N.D. Iowa 2008)).

The cases addressing this issue provide that "[a] minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." *Brown v. Am. Educ. Servs., Inc. (In re Brown)*, 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007) (citations omitted). The bankruptcy court specifically found that Mr. and Mrs. Nielsen are able to maintain a basic standard of living.

It does not appear that ECMC is challenging any of Mr. and Mrs. Nielsen's current living expenses. However, at trial, Mr. Nielsen referenced various expenses that might become necessary, but the bankruptcy court found that the record did not substantiate that those expenses were reasonable or necessary at the current time, nor are they the type of expenses experienced on a regular basis. Further, no evidence of the need for such expenses was found in the record on appeal.

Mr. Nielsen expends considerable effort discussing mold, mold exposure, and mold allergies. Apparently, the Nielsen family was exposed to mold in 2005, but the bankruptcy court found that the evidence indicated that the presence of mold did not exceed normal ranges. Mr. and Mrs. Nielsen believe they were again exposed to mold in their rented apartment in Red Oak, Iowa, in 2006, which caused them to obtain a new residence. The record contains no documentation of this exposure. Their current home was purchased in 2007 and, according to Mr. Nielsen, they incurred substantial

expenses to ensure that the new home was mold-free. However, the record is, again, devoid of any supporting information.

A typical undue hardship case would involve a detailed analysis of each of the debtor's claimed expenses. No detailed listing of the Nielsen family's current living expenses is found in the record on appeal. Schedules I and J filed in the bankruptcy case, which are supposed to show Debtors' monthly income and expenses as of the date of bankruptcy filing, do show a monthly deficit of $431.39. However, as the bankruptcy court noted, Debtors did not include on Schedule I the SNAP and WIC benefits, monthly cell allowance, periodic bonuses, and annual tax refunds. The monthly deficit between income and expenses is eliminated when those additional items are considered. Based on the record, we cannot say that the bankruptcy court erred in finding that the Nielsens are able to maintain a basic standard of living.

C.      Any Other Relevant Facts and Circumstances.

To completely evaluate an individual's ability to repay student loans without undue hardship, the court should analyze any other relevant factors applicable to an individual's case. As the bankruptcy court noted, much of Mr. Nielsen's case focuses on the issues related to the family's mold exposure. Mr. Nielsen testified that he suffers from headaches when mold is present in a building. However, the bankruptcy court found that the medical records in evidence do not specifically identify any mold sensitivity diagnosis. Further, there is some discussion regarding illness of Mr. Nielsen's wife and oldest child due to the mold exposure but, again, there is no evidence of the extent of that illness, any lasting effects of the exposure, or any necessary costs associated with it. The bankruptcy court found that the medical records in evidence simply do not support any sort of ongoing treatment or orders with respect to mold or mold sensitivity. The record on appeal is completely devoid of such information.

In addition, the Eighth Circuit Court of Appeals confirmed in *Jesperson* that the Income Contingent Repayment Program ("ICRP") for student loans is a factor to be considered in evaluating the totality of the debtor's circumstances:

> [U]ndue hardship under § 523(a)(8) continues to require separate analysis under which, in this circuit, the ICRP is "a factor" to consider in evaluating the totality of the debtor's circumstances. However, a student loan should not be discharged when the debtor has "the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program."

*Id.* at 781 (citations omitted). Although some question remains as to the weight to be given to the ability to make an ICRP payment following *Jesperson,*[5] the Eighth Circuit Court of Appeals made clear that the ability to do so is, at a minimum, an important factor in the analysis.

The bankruptcy court found that, according to ECMC, Mr. Nielsen qualifies for the ICRP, under which monthly payments are calculated based upon an annual review of income.[6] The evidence indicated that at the time of trial, based upon income and family size, Mr. Nielsen's required payment under the ICRP would be zero. In fact, according to the bankruptcy court, his annual income would need to exceed $55,000.00 prior to being required to make any payment under the program. During

---

[5]*See id.* at 784 (Smith, J., concurring) (stating that, while the ICRP is a factor relating to good faith in the analysis, a bankruptcy court should not place too much weight on the debtor's refusal to enroll in the ICRP); *id.* at 786 (Bye, J., dissenting) (stating that a debtor is not ineligible for a hardship discharge if capable of making payments under the ICRP).

[6]Mr. Nielsen disputes his eligibility, but failed to include anything in the record on appeal to support his position.

his testimony, Mr. Nielsen stated that he had several concerns about the ICRP program, with the primary concern being the potential tax obligation at the end of the program (25 years) due to debt forgiveness. However, as the bankruptcy court noted, "[t]he mere possibility of tax consequences at the expiration of the 25-year repayment period is not dispositive of the issue of whether the ICRP represents a viable avenue for repayment of student loan debt." We agree.[7]

Finally, the bankruptcy court noted that prior to bankruptcy, the family was paying more than $1,000.00 monthly to service credit card debt that has now been discharged. In addition, the family receives substantial tax refunds each year and Mr. Nielsen has a retirement fund and equity in his home. Further, participation in the ICRP would not require any payment unless and until his income substantially increases. Therefore, the bankruptcy court found that Mr. Nielsen failed to meet his burden of showing that his student loans were dischargeable based upon undue hardship.

Based upon our de novo review of the record, such as it is, we agree. The bankruptcy court did not clearly err in any of its factual findings and, in light of the incomplete record on appeal, Mr. Nielsen has failed to meet his rigorous burden of proving undue hardship under the totality of his financial circumstances. Further, the bankruptcy court did not abuse its discretion with respect to the various other issues raised by Mr. Nielsen.

---

[7]Of course, this does not mean that a debtor will never be able to show undue hardship whenever the ICRP calls for a zero payment since each case must be evaluated on its own merits upon consideration of the totality of the financial circumstances.

## CONCLUSION

Accordingly, we affirm the decision of the bankruptcy court.

_____