# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 13-6034

_____

In re: Erik Nielsen; Kathryn R Nielsen

*Debtor*s

------------------------------

Kathryn R Nielsen

*Plaintiff - Appellant*

v.

ACS, Inc.

*Defendant*

Educational Credit Management Corporation

*Intervenor Defendant - Appellee*

_____

No. 13-6035

_____

In re: Erik Nielsen; Kathryn R Nielsen

*Debtor*s

------------------------------

Kathryn R Nielsen

*Plaintiff - Appellant*

v.

Iowa Student Loan Liquidity Corporation

*Defendant - Appellee*

Educational Credit Management Corporation

*Intervenor Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: September 24, 2014
Filed: October 27, 2014

_____

Before FEDERMAN, Chief Judge, SCHERMER and SALADINO, Bankruptcy
Judges.

_____

SCHERMER, Bankruptcy Judge

Kathryn R. Nielsen (the "Debtor"), appeals the bankruptcy court's[1] ruling denying her request for discharge of her student loan obligations to Educational Credit Management Corporation ("ECMC") under 11 U.S.C. § 523(a)(8). We have

_____

[1] The Honorable Anita L. Shodeen, Chief Judge, United States Bankruptcy Court for the Southern District of Iowa.

jurisdiction over this appeal.[2]  *See* 28 U.S.C. § 158(b).  For the reasons that follow, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court properly held that the Debtor failed to meet her burden of proving an undue hardship under 11 U.S.C. § 523(a)(8).

## BACKGROUND

On October 7, 2009, the Debtor, together with her husband, Erik Nielsen, filed a voluntary petition for relief under Chapter 7.  On January 21, 2010, the Debtor filed two adversary proceedings that are the subject of this appeal, seeking determinations that her student loans were dischargeable.[3]

The Debtor's husband, Erik Nielsen, filed a separate adversary proceeding, seeking to discharge his own student loan debt.  The three adversary proceedings were consolidated for the purposes of discovery, but they were not consolidated at the time of the trial.[4]  In the order on appeal to us, the bankruptcy court stated that

---

[2]    After trial, the bankruptcy court entered its order on May 24, 2013, but did not enter a separate judgment.  The Debtor filed a notice of appeal on June 9, 2013.  On appeal by the Debtor from our dismissal order, the Eight Circuit held that the Debtor's notice of appeal was timely because a judgment was not deemed to be entered until October 21, 2013.  *See* Fed. R. Civ. P. 58(a) and (c), made applicable by Fed. R. Bankr. P. 7058. The Eighth Circuit vacated our dismissal order and remanded this matter to us.  *Nielsen v. ACS, Inc. (In re Nielsen*), 553 Fed. Appx. 654 (8th Cir. 2014).

[3]    The adversary proceedings originally named two separate lenders as defendants.   However, ECMC intervened as a defendant in each adversary proceeding.

[4]    The Debtor's two adversary proceedings were consolidated for trial and resulted in one order.  The notice of appeal was captioned for, and filed in, both

"pursuant to the Plaintiff's request, all exhibits, arguments, statements and information whether supplied by [the Debtor or Mr. Nielsen], in their respective cases, have been reviewed and considered in the determination of this adversary proceeding." We do the same and consider the record to include all of such documents and information available from the bankruptcy court's dockets or otherwise provided to us in this appeal.[5]

During high school, the Debtor earned college credits from course work through a local community college. After graduating from high school in 1995, the Debtor attended the University of Nebraska-Omaha for three semesters, and ultimately obtained an Associates of Science degree in biology when she continued her studies at Iowa Western Community College. Thereafter, the Debtor obtained two degrees, a Bachelor of Science in Health Services Administration in 2000 and a Master of Business Administration in 2001, both from the University of South Dakota. The Debtor also worked toward a Master Degree in Public Administration at the University of South Dakota, but she failed to complete that program due to problems during pregnancy in 2005. The Debtor obtained 23 student loans from 1996-2005 and she testified that she was 36 years old at the time of trial.

---

adversary proceedings. The two appeals have been consolidated. The Debtor's husband's adversary proceeding was tried separately from the Debtor's adversary proceeding and it was the subject of separate appeals. *See Nielsen v. ACS, Inc. (In re Nielsen),* Bankruptcy No. 09-4888-als7, Adversary No. 10-30015-als, 2012 WL 649929 (Bankr. S.D. Iowa Feb. 28, 2012); *aff'd* 473 B.R. 755, 758 (B.A.P. 8th Cir. 2012), *aff'd* 502 Fed. Appx. 634 (8th Cir. 2013).

[5] The Debtor provided to us a copy of exhibits introduced by the Debtor and Mr. Nielsen at trial, but some of the Nielsens' trial exhibits are not included in the binders provided to us. The Debtor also provided us with additional documents on appeal that concern events after trial and that were not presented to the bankruptcy court. Those documents are not properly considered by us on appeal.

4

The Debtor devotes considerable attention in her briefs to an alleged medical condition of herself, her husband and her oldest son related to allergies and mold exposure, which in her opinion forms a basis of a disability and results in an undue hardship. The bankruptcy court summarized exhibits presented by the Debtor, dealing with records from allergy and injection treatments in 2003, ultrasound records from the Debtor's pregnancy, records from medical visits due to skin issues in the summer of 2005, notes from doctor visits for the Debtor's son, the Debtor's deposition, and documents submitted to show the consequences of mold exposure. It determined that the Debtor's evidence did not show a disability from mold exposure that would result in undue hardship.

The bankruptcy court classified the Debtor's work history following high school as "minimal, if non-existent." It also cited to the Debtor's belief after obtaining her bachelor's degree that the type of job she sought required a master's degree.

The Debtor admitted to a cessation of her formal job search in 2010, and the Debtor had not been looking for full time employment between 2005 and when her bankruptcy petition was filed. As the bankruptcy court noted, the Debtor maintained that she was unemployed because of the limited job openings in the area where she lives. The Debtor believed she could not relocate because of the modifications made to her home to avoid mold growth. The Debtor also maintained that she was unemployed because she was overqualified for many positions, while also claiming elsewhere that she lacked necessary job experience to gain employment. The reasons given by the Debtor at trial for why she stopped looking for employment included things such as medical issues, child care expenses, and time spent preparing for her adversary proceedings and Erik Nielsen's adversary proceeding.

The Debtor planned to nurse her youngest child until the age of three and that she believed this prevented her from working. At the time of trial, the Debtor's youngest child was only months old. The Debtor testified that she would home school her four children, a decision made based not on conditions or needs of the children that require home schooling but, instead, for reasons related to discipline and religion. Therefore, the Debtor did not expect to work for the next eighteen years.

And the bankruptcy court stated that "[a]lthough the monthly budget might be tight, based upon the family income, government benefits and tax refunds, the Nielsens are able to maintain a sufficient standard of living . . . ." To make this determination, the trial court necessarily relied upon the assessment of the family income and expenses from Mr. Nielsen's case, as updated by the record in the Debtor's case.

Mr. Nielsen consistently held full-time positions in his chosen field and, due to work injuries, the Debtor changed jobs despite taking a pay cut from the $30,000 he was making. We stated in our opinion in Mr. Nielsen's appeal that the bankruptcy court found that his 2010 tax return showed a salary of about $26,000, but his testimony and schedules reflected a salary of about $30,000. Mr. Nielsen did not appear open to exploring the possibility of a higher paying job or a second job, but he did have room for advancement in his current position. The family received insurance benefits through Mr. Nielsen's employer. Mr. Nielsen received additional income that was not listed on his Schedule I. He received periodic bonuses ($1,000 in 2010 and a smaller amount in 2011) and a $50 monthly cell phone allowance. The Nielsens received government assistance through the Supplemental Nutrition Assistance Program ("SNAP") ($316 monthly) and the Women, Infants, and Children Program ("WIC"), and that they received significant annual tax refunds in an approximate amount of $8,000, which refunds were likely to continue into the future. Mr. Nielsen had a retirement fund, the Nielsens had equity in their home and, through

6

their bankruptcy case, the Nielsens discharged a significant amount of credit card debt that they had been servicing monthly pre-petition.

At the Debtor's trial (which took place in August, 2012, over 9 months after Mr. Nielsen's trial), the bankruptcy court heard testimony about things that the Debtor believed had changed in the family's income since Mr. Nielsen's trial. For example, Mr. Nielsen testified that his employer provided him with a cell phone rather than a monthly cell phone allowance, and that he could not recall when he last received a bonus from his employer, but he did not believe it was in the past year. The Debtor stressed that the amount of the family's government benefits changed from time to time. When asked by the court to provide an estimate of the monthly amounts received as of trial, the Debtor approximated amounts of $150 in WIC benefits and $300 or $400 in SNAP benefits (the Nielsen's fourth child was born during the time between the trials), and stated that, at the time, the children received Medicaid to supplement the private insurance. The Debtor also testified that the family received a tax refund exceeding $7,000 in 2011.

With respect to the family's expenses, the bankruptcy court stated that "[a] review of monthly living expenses detailed in the original schedules and at trial support the conclusion that the family's monthly living expenditures are reasonable, necessary, and modest." The bankruptcy court rejected the argument that possible future expenses would prevent the Debtor from making payment on her student loans. The Debtor claimed that her current expenses exceed her income and the Nielsens could not afford to make their student loan payments. The court acknowledged that the Debtor's expenses had presumably increased since the birth of the Nielsens' fourth child. Nevertheless, it ruled that the Nielsens were able to maintain a sufficient standard of living. And the court noted in its opinion that when the Debtor had available funds in the past, she repaid family members, rather than any amount of her student loans.

## STANDARD OF REVIEW

Whether excepting a debtor's student loan debt from discharge would impose an undue hardship is a conclusion of law that we review *de novo. Walker v. Sallie Mae Servicing Corp. (In re Walker),* 650 F.3d 1227, 1230 (8th Cir. 2011) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003)). "Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error." *Educational Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009) (citing *Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds),* 425 F.3d 526, 531 (8th Cir. 2005)). "We will not upset the bankruptcy court's findings of fact unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made." *Nielsen v. ACS, Inc. (In re Nielsen),* 473 B.R. 755, 758 (B.A.P. 8th Cir. 2012), *aff'd* 502 Fed. Appx. 634 (8th Cir. 2013) (citations omitted).

## DISCUSSION

Bankruptcy Code § 523(a)(8) provides, in pertinent part, that a bankruptcy discharge does not discharge student loan debt "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor or the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). The debtor bears the burden to prove undue hardship by a preponderance of the evidence. *Jesperson*, 571 F.3d at 779. The test used in the Eighth Circuit to determine undue hardship is the totality-of-the-circumstances test, as stated by the Eighth Circuit:

> In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan

8

debt-while still allowing for a minimal standard of living-then the debt should not be discharged.

*Long*, 322 F.3d at 554-55 (citations omitted). Applying a *de novo* review, we determine that the bankruptcy court applied the correct standard, the totality-of-the circumstances standard, and accurately held that the Debtor failed to meet her burden of proving an undue hardship.

## A. The scope of our review

The briefs filed by the Debtor on appeal are a confusing morass of statements and arguments. She includes no less than 29 items in her "statement of issues" on appeal, many of which are difficult to comprehend. However, it is apparent that many of these "issues" are not properly before us because they were not presented at trial or are irrelevant to the only issue on appeal (whether the Debtor met her burden at trial of proving an undue hardship).

A consistent theme in the Debtor's briefs is her alleged post-trial experiences related to domestic violence, her divorce, and changes in her income due to the breakdown of her marriage. The alleged post-trial conditions were not part of the record before the bankruptcy court at trial, and are not appropriately considered in this appeal. *See First Bank Investors' Trust v. Tarkio Coll.,* 129 F.3d 471, 476-77 (8th Cir. 1997) (appellate court ordinarily will not consider issues not presented to the bankruptcy court in the first instance) (cited in *Nielsen*, 473 B.R. at 759). In addition, to the extent that the Debtor argues about matters that were within the bankruptcy court's discretion, we conclude that the bankruptcy court did not abuse its discretion.

9

**B.** **The Debtor's failure to prove undue hardship at trial**

The only "issues" cited by the Debtor that we analyze are those concerning whether at trial the Debtor showed an undue hardship justifying the discharge of her student loans. Addressing matters that form the focus of the Debtor's dispute, we see no problem with the bankruptcy court's decision that the Debtor failed to prove an undue hardship.

**1.** **Mold**

Notwithstanding the Debtor's contentions, the bankruptcy court determined that the evidence regarding her, her husband's and her child's alleged medical conditions concerning allergies related to mold and toxic mold exposure was insufficient to show that any of them suffered from a disability that would constitute an undue hardship.

According to the Debtor, the bankruptcy court's review and assessment of the Debtor's evidence regarding the mold issues was incomplete and incorrect. We disagree. There is no basis for stating that the bankruptcy court did not clearly and comprehensively review the evidence provided to it. The bankruptcy court made detailed findings to support its decision that the Debtor's evidence was insufficient to substantiate a disability that would qualify as an undue hardship. We see nothing in the record on appeal to contradict the bankruptcy court's assessment of the evidence and its decision.

**2.** **Family financial resources and expenses**

The bankruptcy court had before it the assessment of the Nielsens' family income and expenses from Mr. Nielsen's case, plus additional information from the record in the Debtor's case. It was with all of these submissions before it that the

bankruptcy court concluded that, although the family budget was tight, the Nielsens were able to maintain a sufficient standard of living. We see no error with the bankruptcy court's decision.

### 3. Income limitations, future employment and Income Contingent Repayment Plan

The bankruptcy court properly found and considered in its analysis that while some limitations were out of her control, on balance the restrictions on the Debtor's ability to seek and obtain employment were largely self-imposed. Similarly, the prospect of her employment in the future should not be foreclosed. *See Jesperson*, 571 F.3d at 782 ("A debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than the lack of job skills, and he has not made payments on his student loan debt despite the ability to do so.") (citation omitted); *Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund),* 440 B.R. 168, 175 (B.A.P. 8th Cir. 2010) (student loans not discharged where limits on income were self-imposed).

The bankruptcy court reasonably observed the Debtor's young age, her lack of substantiated physical or mental impairments to prevent her from working and her number of marketable degrees. The record supports the court's determination that "based on [the Debtor's] education, and current age, it is unrealistic to conclude that the [Debtor's] employment prospects will never improve."

According to the Debtor, it was improper for the bankruptcy court to consider the availability of and the Debtor's failure to enroll in, an Income Contingent Repayment Plan ("ICRP") that would require no monthly payment under her circumstances. We disagree. The bankruptcy court appropriately considered the ICRP as a factor in its totality-of-the-circumstances analysis, consistent with the law in the Eighth Circuit:

> [U]ndue hardship under § 523(a)(8) continues to require separate analysis under which, in this Circuit, the ICRP is "a factor" to consider in evaluating the totality of the Debtor's circumstances. However, a student loan should not be discharged when the debtor has "the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the student loan program."

*Jesperson*, 571 F.3d at 781(citations omitted).[6] And the Debtor could participate in the zero monthly payment ICRP without compromising her minimal standard of living.

Moreover, in light of the Debtor's situation and prospects for the future, as appropriately assessed by the bankruptcy court, the record supports the bankruptcy court's decision that the Debtor's unwillingness to participate in an ICRP that would require no monthly payment under her current circumstances, constituted an attempt by the Debtor to avoid responsibility for her student loan debt if her situation improved.

The Debtor maintains that the bankruptcy court should not have considered the ICRP in its analysis because of potential tax consequences to her once the loans are ultimately discharged at the end of the ICRP term. As the bankruptcy court stated, no one can predict what the Debtor's tax liability would be from forgiveness of the debt at the end of the 25-year repayment period. We agree with the bankruptcy court that "[t]he mere possibility of tax consequences at the expiration of the 25-year

---

[6] "Although some question remains as to the weight to be given to the ability to make an ICRP payment following *Jesperson*, the Eighth Circuit made clear that the ability to do so is, at a minimum, an important factor in the analysis." *Walker v. Sallie Mae Servicing Corp. (In re Walker)*, 427 B.R. 471, 486-487 (B.A.P. 8th Cir. 2010) (citing concurring and dissenting opinions in *Jesperson*, 571 F.3d at 784, 786), *aff'd* 650 F.3d 1227 (8th Cir. 2011).

repayment period is not dispositive of the issue of whether the ICRP represents a viable avenue for repayment of student loan debt." *See also Sederlund*, 440 B.R. at 175 (relying on *Jesperson*, 571 F.3d at 782, to reject the debtor's position that she had not applied for repayment plans due to possible tax consequences); *Nielsen,* 473 B.R. at 761-762, *aff'd* 502 Fed. Appx. 634 (8th Cir. 2013) (rejecting the same argument in the Debtor's husband's case).

### 4.    Additional considerations

According to the Debtor, the bankruptcy court's decision is inconsistent with established precedent; she maintains that her condition is similar to or worse than the condition of other debtors in cases where undue hardship was established. We are mindful that "fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy." *Long*, 322 F.3d at 554. Based on the record before us, we conclude that the bankruptcy court appropriately assessed the totality-of-the-circumstances of the Debtor's case.

The bankruptcy court stated that the Debtor obtained 23 student loans, but it did not state whether the 23 loans were consolidated. However, the Debtor has not argued that the loans should have been considered separately. Moreover, in light of the bankruptcy court's decision that the Debtor had not met her burden of proving an undue hardship with respect to any of her debt, there would have been no need for the bankruptcy court to have analyzed each of the Debtor's multiple loans separately. *Compare Conway v. Nat'l Collegiate Trust (In re Conway),* 495 B.R. 416, 423-24 (B.A.P. 8th Cir. 2013) (case remanded to bankruptcy court for loan-by-loan analysis of multiple loans where debtor established that she did not have reasonably reliable financial resources to pay the entire debt), *aff'd* 559 Fed. Appx. 610 (8th Cir. 2014). It was the Debtor's burden to prove undue hardship for one, all, or some of her loans, and she failed to do so.

13

**CONCLUSION**

For the reasons stated, the decision of the bankruptcy court is affirmed.

———————————————