# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6031

_____

In re: Mary A. Hurst

*Debtor*

------------------------------

Mary A. Hurst

*Plaintiff - Appellant*

v.

Southern Arkansas University; Renee S. Williams, Chapter 7 Trustee

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Western District of Arkansas - El Dorado

_____

Submitted: May 19, 2016
Filed: July 19, 2016

_____

Before FEDERMAN, Chief Judge, SALADINO and SHODEEN, Bankruptcy
Judges.

_____

FEDERMAN, Chief Judge.

Debtor Mary A. Hurst appeals from the Bankruptcy Court's[1] order denying her request to discharge her student loan for undue hardship pursuant to 11 U.S.C. § 523(a)(8). For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

The Debtor obtained a $4,000 federal Perkins student loan while attending Southern Arkansas University, majoring in education, for the 1994 – 1995 academic year. At the end of that school year, she traveled to Texas for a summer job and broke her ankle which, she testified, made it impossible for her to return to SAU for the following semester. She had two surgeries and therapy on the ankle, and was on crutches for a year and a half. While still in Texas recovering from the ankle injury, she was involved in a car accident and totaled her car, further preventing her from returning to SAU. The Debtor remained in Texas until about 2009, when she moved back to Magnolia, Arkansas, where she owned a home. She never returned to school.

The Debtor is 66 years old, and plans to work to age 70. She has vision problems as a result of an unsuccessful cataract surgery, and hearing problems, as well as some occasional problems with her ankle. As discussed more fully below, the Debtor is employed, working part-time at SAU's cafeteria, and collects social security benefits. She has no mortgage on her home, although it took her some amount of time (and money) to repair vandalism damage which had occurred while she was away in Texas.

---

[1] The Honorable Richard D. Taylor, United States Bankruptcy Judge for the Western District of Arkansas.

Before the Debtor went into default on the student loan, the regular payment amount was $42. She never made a single voluntary payment on the loan, although SAU intercepted approximately $600 in income tax refunds and applied that to the balance. As of the date of trial, the balance on the student loan was $7,476.78.

The Debtor filed a Chapter 7 bankruptcy case on February 11, 2011. She did not list SAU as a creditor, but reopened the case on November 25, 2014 to seek a discharge of her student loan as an undue hardship pursuant to § 523(a)(8) of the Bankruptcy Code. Following a trial, the Bankruptcy Court held that the Debtor failed to prove that her student loan debt should be discharged. The Debtor appeals.

## STANDARD OF REVIEW

We review the Bankruptcy Court's determination of undue hardship *de novo*.[2] Subsidiary findings of fact on which the legal conclusions are based are reviewed for clear error.[3] We may affirm on any basis supported by the record.[4]

## UNDUE HARDSHIP DISCHARGE OF STUDENT LOANS

Section 523(a)(8) of the Bankruptcy Code provides that student loans are nondischargeable "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[5] In the Eighth Circuit,

---

[2] *In re Long*, 322 F.3d 549, 544 (8th Cir. 2003); *Educational Credit Management Corporation v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009).

[3] *Jesperson*, 571 F.3d at 779; *In re Reynolds*, 425 F.3d 526 (8th Cir. 2005).

[4] *Kaler v. Charles* (*In re Charles*), 474 B.R. 680, 687 (B.A.P. 8th Cir. 2012).

[5] 11 U.S.C. § 523(a)(8).

courts apply a totality-of-the-circumstances test in determining whether a student loan should be discharged as an undue hardship.[6] Under this test, courts must consider the debtor's past, present, and reasonably reliable future financial resources; the debtor's reasonable and necessary living expenses; and any other relevant facts and circumstances.[7] The debtor has the burden of proving undue hardship by a preponderance of the evidence.[8] The burden has been described as "rigorous": "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."[9]

The Debtor here expressly states in her Brief on appeal that she does not take issue with the Court's findings of fact, which were made on the record at the conclusion of the trial.[10] Rather, she contends that the facts lead to the inescapable conclusion that she will suffer an undue hardship if her student loan is not discharged. She asserts that, rather than focusing on her financial circumstances and ability to pay, the Bankruptcy Court focused too heavily on the fact that she has never made any attempt to repay the student loan. We disagree, but in any event, the Court made ample factual findings sufficient to support its conclusion that the

---

[6] *Nielsen v. ACS, Inc.* (*In re Nielsen*), 473 B.R. 755, 759 (B.A.P. 8th Cir. 2012), *aff'd* 502 Fed. Appx. 634 (8th Cir. 2013).

[7] *Id.* (citing *Jesperson*, 571 F.3d at 779).

[8] *Id.*

[9] *Id.* (quoting *Jesperson*, 571 F.3d at 779).

[10] *See Appellant's Brief* at 20.

Debtor has income sufficient to maintain a minimal standard of living while making payments on the student loan.

### *The Debtor's Past, Present, and Reasonably Reliable Future Financial Resources*

As stated, the Debtor has the burden of proving that she does not have reasonably reliable current or future financial resources to make payments on her student loan. When a student loan dischargeability adversary proceeding is brought years after the bankruptcy discharge was entered, as was the situation here, a bankruptcy court should consider the debtor's financial circumstances between her Chapter 7 discharge and the trial date.[11] The Court found that the Debtor has resources sufficient to pay on her student loan, and that she plans to continue working for approximately four more years until retirement.

The Debtor testified concerning her employment history: While she was in Texas after leaving SAU, she worked at a convenience store for two years, earning $600 - $800 per month, and then for a limousine company, earning $1,500 - $1,600 per month. After she moved back to Magnolia, she worked as an advocate at an area women's shelter, earning $1,000 per month. At some point after 2011, she left employment at the shelter and got a job with Aramark at the cafeteria at SAU, running the cash register, sweeping the floors, and cleaning tables. The cafeteria is not open during the summer months or Christmas break, but the Debtor testified she is able to occasionally work some hours on catering jobs through Aramark during those time periods. She also collects social security, as well as unemployment

---

[11] *Walker v. Sallie Mae Serv. Corp.* (*In re Walker*), 650 F.3d 1227, 1231 (8th Cir. 2011).

benefits during times of under-employment. The Court found that Debtor failed to offer any evidence showing that she attempted to find work during the summers or other school vacation periods. The Court also found that she made no effort to use income tax refunds toward payments on her student loan.

The Debtor's schedules, which were offered as evidence at trial, showed that when the Debtor filed her bankruptcy case in 2011, she was earning $1,000 a month in wages from the women's shelter, plus $818 in social security benefits, for total income of $1,818.

As stated, the Debtor stopped working at the shelter at some point after the bankruptcy filing and began working for Aramark at the cafeteria. She testified that, at the time of trial, she was earning around $600 - $700 per month from Aramark, pre-tax, during the school year. She testified she earns less during the summer months, but she also collects some unemployment benefits during those months. In addition, she testified she now receives about $1,000 per month from social security. As a result, her testimony was that she receives a total of about $1,600 - $1,700 per month, pre-tax, during the school year, and less during the summer months. The Court found the Debtor's testimony overall to be credible.

The documentary evidence admitted at trial further supports the Court's conclusion that she had income sufficient to make payments. The evidence shows that the Debtor actually earns about $1,600 - $1,700, on average, year-round. Specifically, the Debtor submitted her 2013 and 2014 income tax returns as evidence at trial. According to the tax returns, in 2013, the Debtor received $11,250 in wages and $13,365 in social security, for a total of $24,615. In 2014, she earned $6,320 in wages, $115 in unemployment compensation, and $13,563 in social security, for a total of $19,998. Thus, the tax returns showed Debtor earned an average of

$2,051.25 per month in 2013,[12] and $1,666.50 in 2014.[13] Also, the tax returns indicate that modest amounts had been withheld from her paychecks for taxes, as the Court found.[14]

The Debtor also submitted Aramark paystubs and her checking account statements for the three months from May 19, 2015 through August 17, 2015. The checking account statements showed deposits from paychecks and unemployment benefits totaling $754, $690, and $500 for those three months, respectively. These would, of course, be the net amounts after taxes were withheld. The Debtor testified that her social security benefits of approximately $1,000 are deposited into a separate savings account.

However, the tax returns showed the Debtor was in fact receiving $13,300 to $13,500 per year in social security in 2013 and 2014, approximately $1,100 per month. Thus, based on her testimony and the documentary evidence, the Debtor's income totaled $1,600 - $1,854 per month in the summer of 2015, which is consistent with the 2013 and 2014 tax returns showing an average of $1,666 - $2,000 per month. The Court found that the Debtor has average income of $1,818 per month, which is amply supported by the evidence.

---

[12] $11,250 + $13,365 ÷ 12 = $2,051.25.

[13] $6,320 + $115 + $13,563 ÷ 12 = $1,666.50.

[14] The Debtor received federal income tax refunds of $541 in 2013 and $350 for 2014.

## *The Debtor's Reasonable and Necessary Living Expenses*

The second factor in the totality of the circumstances test is the Debtor's reasonable and necessary living expenses. "To be reasonable and necessary, an expense must be modest and commensurate with the debtor's resources."[15] "Simply put, if the debtor's reasonable financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."[16]

SAU did not argue at trial, nor does it here, that any of the Debtor's particular expenses are unreasonable or unnecessary. Rather, the question is whether the Debtor has income remaining after paying those expenses with which to make her student loan payments.

The evidence concerning current expenses was sparse at trial. The documentary evidence concerning expenses is limited to the Debtor's Schedule J from 2011. As the Bankruptcy Court found, Schedule J showed expenses totaling $1,779.02, leaving $38.98 in net income in 2011.

The only specific evidence about the Debtor's current expenses was her testimony that she no longer has a car payment, which was $297. On that point, the Debtor testified generally that she needs the extra $297 "to live on," but she did not point to any specific expense which now eats up those extra funds. And, although she said that that using some of that money to make student loan payments would

---

[15] *Jesperson*, 571 F.3d at 780 (citation and internal quotation marks omitted).

[16] *Id.* at 779 (citation omitted).

"make things harder on [her]," she acknowledged that some of that money could go toward making a payment. The Bankruptcy Court found that part of the $297 per month could go toward student loan payments.

This finding was supported by the evidence. The Eighth Circuit has said on more than one occasion that "[a] court may not engage in speculation when determining net income and reasonable and necessary living expenses."[17] Bearing in mind that the Debtor bears the burden of proving that she has no excess funds with which to make the student loan payment, there simply was no evidence as to how the $297 might be being spent. The Debtor's budget is modest, but a finding that she is spending the $297 on living expenses, without evidence of that, would require speculation. In sum, without actual evidence as to how the Debtor's expenses might have otherwise changed since 2011, the only evidence was that the Debtor now has monthly expenses of $1,482.02. With income averaging at least $1,800 per month, as found by the Court and discussed above, the record shows she has sufficient income to make the $42 student loan payment and the Bankruptcy Court did not clearly err in so finding.

### *Other Relevant Facts and Circumstances*

"Because the totality-of-the-circumstances test is 'very broad,' courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination."[18] Such factors include:

(1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good

---

[17] *Walker*, 650 F.3d at 1233 (quoting *Jesperson*, 571 F.3d at 780).

[18] *Jesperson*, 571 F.3d. at 783 (Smith, concurring) (citation omitted).

faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.[19]

These are mere factors for a court to consider, and a court need not address each and every one of them, particularly where there is no evidence, one way or the other, concerning a factor.

The Court found that the Debtor has the ability to make some payments on her student loan debt, so the first factor weighed against dischargeability. Next, the court found that she had made no effort to obtain deferment or forbearance on her loan. As to whether the hardship imposed by loan payments would be long term, the Court found that she has the ability to make payments, at least until her retirement. The Court further found that she has not made payments voluntarily on the loan. The Court did find that she had hearing and vision problems which could affect her ability to earn income, but there was no evidence that such problems would lead to a reduction in her income during the time that she continues to work. Indeed, the Debtor testified she intends to continue to work until age 70. With regard to the sixth factor, the evidence was that she has not been able to obtain gainful employment in the field of education. As far as the Debtor having made a good faith effort to maximize income and minimize expenses, the Court held there was no evidence she had attempted to supplement her income during the school vacation

---

[19] *Id.* at 783-84 (Smith concurring) (citation omitted).

- 10 -

periods, or that she had used tax refunds toward student loan payments. There was no evidence offered as to the eighth and ninth factors. Thus, the Bankruptcy Court considered all the enumerated factors for which evidence was offered.

Nevertheless, the Debtor asserts that the Court placed a significant amount of emphasis on the second and fourth factors, namely, that she had not made a single voluntary payment on, or otherwise attempt to even address, her student loan in the twenty years since she incurred them, despite the fact that the payments were only $42 per month.

The Eighth Circuit said in *In re Jesperson* that, "[w]ith the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income and minimize expenses."[20] In essence, what the Bankruptcy Court concluded was that, to the extent that requiring the Debtor to repay the loan – given her age and the current balance of nearly $7,500 – could be viewed as an undue hardship, those circumstances were of the Debtor's own making, inasmuch as she never made any attempt at all to pay or otherwise address the student loan in more than twenty years.[21] Although the facts in *Jesperson* are dissimilar to those here, the Eighth Circuit has said:

> While the size of student loan debts relative to the debtor's financial condition is relevant, this should rarely be a determining factor: it

---

[20] 571 F.3d at 782 (citations omitted).

[21] *Accord, Johnson v. Dept. of Educ.* (*In re Johnson*), 543 B.R. 601, 609-610 (Bankr. W.D. Mo. 2015) (holding that choosing to take out loans later in life, entering multiple deferments, and making no payments – resulting in debtor being post-retirement age at the conclusion of the repayment plan – did not warrant a discharge of student loans).

- 11 -

would be perverse to allow the debtor to benefit from [his] own inaction, delay and recalcitrance by automatically granting a discharge simply because the debt is a sizeable one. This, of course, would benefit those who delay and obstruct the longest and could encourage other students to follow the [same] course.[22]

As the Bankruptcy Court acknowledged, the standard for discharging student loans in the Eighth Circuit is onerous, and the Debtor bears the burden of proving undue hardship. While the Court acknowledged that the Debtor's circumstances were "sympathetic," it concluded that she had not proven that she lacked ability to make student loan payments while maintaining a minimal standard of living, given the evidence of her income and expenses, and despite the fact that the balance had ballooned due to nonpayment. The Court found that the other facts and circumstances it considered did not justify a different result. Those factual findings were not clearly erroneous.

Finally, the Eighth Circuit has said that the availability of an income-based repayment program is an important factor to consider in discharging student loans.[23] Here, SAU's representative testified that, because the university still holds the loan, it is not subject to the Department of Education's frequently-discussed income-based programs. However, the representative testified that the loan could be "rehabilitated" through twelve months of negotiated payments, at which time the loan would come out of default status and the Debtor could resume the $42 monthly

---

[22] *Jesperson*, 571 F.3d at 780 (quoting *United States v. Kephart*, 170 B.R. 787, 792 (W.D. N.Y. 1994)).

[23] *In re Walker*, 427 B.R. at 486-87 ("Although some question remains as to the weight to be given to the ability to make an [IBRP] payment following *Jesperson*, the Eighth Circuit made it clear that the ability to do so is, at a minimum, an important factor in the analysis.").

payments. As stated, the Debtor never applied to participate in that rehabilitation program, and so was not able to offer any evidence as to what her payment would be during the one-year rehabilitation period. Nevertheless, the evidence showed that she has the ability to make payments in excess of $42 per month, at least during the year required.

The dissenting opinion points out that the Bankruptcy Court – and this panel – cannot speculate in making student loan determinations. In other words, student loan cases must be decided based only on the evidence offered. And, the Debtor carries both the burden of going forward with the evidence, and the burden of persuasion as to the outcome. Here, as to the Debtor's present ability to make payments, except as to the vague testimony that she uses all of her income "to live on," the evidence was uncontradicted that the Debtor has up to $300 per month in income available with which she could be making student loan payments. The Debtor has, therefore, failed to prove that she lacks the present ability to make payments on her student loans. Perhaps the Debtor could have proven that she has current expenses in excess of her income, but she did not do so. Therefore, her action seeking discharge of her student loan as an undue hardship must fail.[24]

## CONCLUSION

For the reasons stated, the Bankruptcy Court did not err in holding that the Debtor did not meet her burden of proving that repayment of the student loan would

---

[24] *In re Walker*, 427 B.R. at 479 (suggesting in dicta that § 523(b) and Federal Rule of Bankruptcy Procedure 4007(b) may permit debtors to seek a discharge of student loans in a second bankruptcy case, based on changed circumstances, notwithstanding a determination of nondischargeability in a prior case).

impose an undue hardship on her. ACCORDINGLY, the Judgment of the Bankruptcy Court is AFFIRMED.


SHODEEN, Bankruptcy Judge dissenting.

The majority concludes that sufficient facts support the bankruptcy court's determination that Hurst does not qualify for discharge of her student loans for undue hardship. I believe this result rests upon an overly narrow application of the totality of the circumstances test, and, therefore, I respectfully dissent.

Discharge of student loan debt in bankruptcy is governed by 11 U.S.C. § 523(a)(8) which in relevant part states: "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." The intent of this statute is to prevent abuse of the bankruptcy system by undeserving students seeking to discharge their student loan obligations. *Andresen v. Neb. Student Loan Program, Inc.* (*In re Andresen*), 232 B.R. 127, 130 (B.A.P. 8th Cir. 1999). The term undue hardship is not defined in the Bankruptcy Code. Consequently, the standards to determine what constitutes undue hardship have been developed by the courts. There are two primary tests used to evaluate whether an undue hardship exists for discharge of student loans. The majority of Circuits follow the test adopted by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). Under *Brunner*, three required elements must be met to establish an undue hardship: (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan; (2) additional circumstances exist that indicate this state of affairs is likely to persist for

- 14 -

a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans. *Id.* at 396.

Many debtors fail to meet the rigid standards imposed by the *Brunner* test, which has been expressly rejected by the Eight Circuit:

> We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8) . . . . We believe that fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.

*Long v. Educ. Credit Mgmt. Corp.* (*In re Long*), 322 F.3d 549, 554 (8th Cir. 2003). Instead, we apply a more flexible approach under the totality of the circumstances test, which has three components: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. *Id.* Applying the facts contained in the record to all three areas of inquiry, I believe an undue hardship exists.

1.     Past, Present and Future Financial Resources

According to her original Schedules I and J, Hurst did not have sufficient income to make her student loan payment at the time she filed bankruptcy. While she no longer has to make her $297 per month car payment, this saving is offset by Hurst's decreased income. On a month when she works all of the hours available to her at Aramark, Hurst makes $300 to $400 less than what she was able to make working at the shelter. Also of note is the fact that Hurst's monthly income is not consistent due to the sporadic availability of work at Aramark. To calculate her

average monthly income based upon her annual income may not truly reflect the actual amount she receives from wages and unemployment in a given month when school is not in session.

Additionally, both the majority and the bankruptcy court overlook the relevant inquiry into the reliability of Hurst's future income to make the loan payments. *See Jesperson*, 571 F.3d at 782 (discussing evidence that debtor could enjoy sustained legal employment); *Nielsen v. ACS, Inc.* (*In re Nielsen*), 473 B.R. 755, 759-60 (B.A.P. 8th Cir. 2012) (emphasizing debtor's ability for professional advancement and likelihood of future tax refunds), *aff'd* 502 Fed. App'x 634 (8th Cir. 2013); *Ford v. Student Loan Guar. Found. of Ark.* (*In re Ford*), 269 B.R. 673, 676 (B.A.P. 8th Cir. 2001) (finding that debtor's worsening arthritic condition will decrease future ability to work and increase medical costs). Hurst earns $7.50 an hour at her job. According to her tax return, her combined income from all sources in 2014 was $19,883 which included her gross wages ($6,320), unemployment ($115) and social security benefits ($13,563). There are no facts to suggest that these amounts will increase in the foreseeable future. Instead the record shows that Hurst's hearing and vision problems will almost certainly affect her ability to work. *See Reynolds v. Pa. Higher Educ. Assistance Agency* (*In re Reynolds*), 425 F.3d 526, 532 (8th Cir. 2005) (declining to ignore the reality that in many cases "a debtor's health and financial position are inextricably intertwined"); *Ford*, 269 B.R. at 676. There is nothing in the record to indicate that Hurst's reliable future income at retirement will consist of anything other than her monthly social security benefit. That benefit amount is currently less than her necessary monthly expenses, even after adjusting for the removal of the car payment.

## 2. Reasonable and Necessary Living Expenses

Due to the delay in bringing the discharge action, the relevant time period for examination of current income and expenses is evaluated at the time of trial. Amended Schedules I and J were not submitted to the court for this time period. Hurst's testimony indicated that there had been a change in her expenses because she no longer had a car payment. The addition of these funds to her monthly budget results in a higher disposable income amount. With that adjustment there is no dispute that the expenses are both reasonable and necessary.

## 3. Any Other Relevant Facts and Circumstances

Nothing in the record disputes Hurst's statements that she attempted to contact the University regarding her student loan obligation. Eventually, she learned that she did not qualify for any deferment or forbearance because the loan was in default and had been accelerated. Exhibits 4 and 5 explain the options available to Hurst. Rehabilitation of the loan was possible through consecutive monthly payments of an agreed upon amount for a one year period[25]. If she had followed this course of action and made all of the required payments without a default, Hurst could then apply for forbearance or deferment on her loan obligation. To qualify for a deferment of up to three years the borrower must be unemployed. Forbearance, during which interest continues to accrue, may be granted for economic hardship defined by the poverty guidelines and whether the debt "is excessive in comparison to income." The terms of the loan do not permit the school to cancel the debt or adjust payments due to hardship. The options that were and are available to Hurst are very different from the testimony that described the Perkins Loans as being popular with nursing and

---

[25] Both the bankruptcy court and the majority conclude that $42 is the monthly payment that would be the amount required to rehabilitate to the loan but neither that amount nor other conditions are clearly ascertained from the record.

- 17 -

educational students due to the availability of loan cancelation under certain circumstances, which do not include an inability to pay.

The bankruptcy court focused on Hurst's failure to take the initiative to obtain a payment accommodation and her failure to make any voluntary payment on the student loan. Without elaboration, these failures are described as self-imposed conditions in the majority opinion. Even under the more stringent *Brunner* test, a failure to make minimal payments does not preclude a determination of undue hardship when a debtor's income has never significantly risen above living expenses. *See Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, 918 (B.A.P. 9th Cir. 2012). Similarly, under the totality of the circumstances test a failure to make payments or participate in available loan programs does not preclude a determination of undue hardship. It is simply one factor that can be considered. *See Jesperson,* 571 F.3d at 784-85 (citation omitted).

CONCLUSION

The totality of the circumstances test is not a purely mathematical formula. *Id.* at 788. Its purpose is to permit all of a debtor's relevant circumstances to be fully considered to determine whether repayment of a student loan qualifies as an undue hardship. Non-pecuniary considerations are equally as important to pecuniary ones in the analysis. "We will not adopt an interpretation of 'undue hardship' that causes the courts to shut their eyes to factors that may lead to disaster, both personal and financial, for a suffering debtor." *Reynolds*, 425 F.3d at 531. "Each bankruptcy case involving a student loan must be examined on the facts and circumstances surrounding that particular bankruptcy for the Court to make a determination of 'undue hardship.'" *Id.* at 532 (citation omitted). Both the bankruptcy court and the majority opinion rely on *Jesperson* in reaching their conclusions. There are a

number of relevant distinguishing factors between the circumstances in that case to those of Hurst. In *Jesperson* the debtor's young age, good health, number of degrees, marketable skills, and lack of physical impairments all weighed *against* granting an undue hardship discharge. 571 F.3d at 780. Each one of these factors, when considered on the basis of the record here, weighs markedly *in favor* of granting an undue hardship discharge in this case.

A court is not permitted to speculate or make unsupported adjustments to a debtor's income, expenses or circumstances in determining undue hardship. These are the undisputed facts in this case: Hurst moved to Texas after completing her first year as a student with the intent of returning to school. Due to a series of accidents, she remained in Texas and did not finish her education. Since 1995 she has consistently held low paying jobs. Hurst is approaching retirement age, is working at a minimum wage job, and has significant health difficulties which compromise her ability to work. If she did successfully complete rehabilitation of the loan, she would be another year closer to retirement at which time she could request a forbearance of her payments. Hurst's current and future income will not result in substantial repayment on her student loans under any circumstances. At retirement she will be left with a loan balance and a fixed income consisting only of her monthly social security benefit.

Under de novo review and for the reasons stated, I conclude that an undue hardship exists under the totality of the circumstances test. Accordingly, I would reverse the bankruptcy court's order and remand for entry of a judgment discharging Hurst's student loan obligation.

_____